**Raymond Eugene TEAGUE, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 14, 1988.

Permission to Appeal Denied by Supreme Court June 5, 1989.

William P. Redick, Jr., Nashville, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Gordon W. Smith, Asst. Atty. Gen., Nashville, Gary P. Gerbitz, Dist. Atty. Gen., Jerry Sloan, Asst. Dist. Atty. Gen., Chattanooga, for appellee.

## OPINION

JONES, Judge.

The petitioner, Raymond Eugene Teague, entered a plea of nolo contendere to the offense of accessory before the fact to murder second degree. The petitioner was sentenced to serve a term of ten (10) years in the state penitentiary pursuant to a plea bargain agreement.

On November 1, 1985, the petitioner instituted a post-conviction proceeding in the Criminal Court of Hamilton County, Tennessee. The trial court denied the petition following an evidentiary hearing. The petitioner subsequently appealed as of right to this Court pursuant to Rule 3(b), Tenn.R. App.P.

### ISSUES PRESENTED FOR REVIEW

The petitioner has raised three issues for our review. He contends that his plea of nolo contendere and subsequent conviction should be set aside and vacated because (a) the petitioner was denied the effective assistance of counsel when he entered the plea of nolo contendere, (b) the plea of nolo contendere was not voluntarily, understandingly and intelligently entered, and (c) the prosecution failed to disclose evidence favorable to the petitioner.

### STANDARD OF APPELLATE REVIEW

When the petitioner in a post-conviction proceeding is afforded an evidentiary hear-

ing on the grounds raised in a petition for post-conviction relief, the finding of facts made by the trial court at the conclusion of the hearing has the weight of a jury verdict. Consequently, this Court is bound by the trial court's finding of facts unless the evidence contained in the record preponderates against the judgment entered in the cause by the trial court.[1]

When the petitioner seeks to vitiate a conviction on the ground counsel's representation was ineffective, the petitioner must establish by a preponderance of the evidence (a) the services rendered or advice given by counsel fell below "the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975) and (b) the unprofessional conduct of counsel enured to the prejudice of the petitioner. *Williams v. State*, 599 S.W.2d 276, 279 (Tenn.Crim.App. 1980). The United States Supreme Court adopted this two-prong test in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Later, the Court applied *Strickland* to allegations of ineffective assistance of counsel arising from guilty plea proceedings. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

■ This Court has applied the two-part standard to claims of ineffective assistance of counsel incident to guilty plea proceedings on numerous occasions. Today, we hold that this two-part standard applies when the claim of ineffective assistance of counsel arises incident to the entry of a plea of nolo contendere. *See Manley v. United States*, 588 F.2d 79 (4th Cir.1978).

In the case *sub judice*, the trial court found that the services rendered and advice given by the petitioner's privately retained counsel fell below the range of competence demanded of attorneys in criminal cases. However, the trial court found that counsel's ineffectiveness did not enure to the prejudice of the petitioner. The trial court ruled the petitioner's contention that his plea of nolo contendere was not voluntarily, understandingly and intelligently entered had been previously determined. Consequently, this Court's review is limited in scope to a determination of whether the evidence contained in the record preponderates against these findings of the trial court.

## STATEMENT OF FACTS

On the 19th day of September, 1979, the Hamilton County Grand Jury indicted the petitioner for murder first degree. The indictment alleged that the petitioner murdered John Mark Edmonds. Before the petitioner was tried for this offense, his wife, Teresa (Terri) Lynn Teague, was murdered. On the 25th day of April, 1980, the petitioner was again indicted by the Hamilton County Grand Jury for murder first degree. The second indictment alleged that the petitioner murdered Terri Teague.

The State of Tennessee elected to try the Terri Teague murder case first. On the 22nd day of November, 1980, the petitioner was convicted of murder first degree by a jury of his peers for the murder of Mrs. Teague. The jury sentenced the petitioner to the extreme punishment of death. The petitioner appealed as of right to the Tennessee Supreme Court.

The petitioner's retained counsel were confident that the petitioner's conviction and death sentence for the murder of Mrs. Teague would be set aside by the Supreme Court, and the case would be reversed and remanded to the trial court for a new trial. Mr. Edward E. Davis of the Chattanooga Bar, who had been retained to represent the petitioner, stated he felt "very good about the possibility of reversal." Mr. Robert J. Batson, Jr. of the Chattanooga Bar, who was retained by Mr. Davis to assist him in the representation of the petitioner, stated he "certainly felt like the matter [the Teague murder case] would be reversed." Counsel had expressed these sentiments to the petitioner before he entered the plea of nolo contendere in the case *sub judice*.

While the petitioner's appeal to the Tennessee Supreme Court was still pending,

---

1. *Turner v. State*, 698 S.W.2d 90, 91 (Tenn.Crim. App.1985); *State v. Swanson*, 680 S.W.2d 487, 490 (Tenn.Crim.App.1978), *cert. denied*, 441 U.S. 947, 99 S.Ct. 2170, 60 L.Ed.2d 1050 (1979); *Janow v. State*, 4 Tenn.Crim.App. 195, 201, 470 S.W.2d 19, 21 (1971).

the Edmonds case was set for trial. The day before the trial was to commence the assistant district attorney generals, who were to prosecute the petitioner for the murder of Edmonds, advised defense counsel that they were willing to recommend a sentence of ten (10) years in the state penitentiary if the petitioner desired to dispose of the prosecution without a trial. Apparently, the plea bargain agreement included the option of permitting the petitioner to enter a plea of nolo contendere as opposed to a plea of guilty.

Shortly after the plea bargain offer was made, Mr. Davis went to the Hamilton County Jail, where the petitioner was confined, and conveyed the offer to the petitioner. The petitioner responded by asking Mr. Davis what effect, if any, would his entry of a plea of nolo contendere in the Edmonds case have upon the Terri Teague murder case, if, as defense counsel had advised him, the Teague murder case was reversed by the Tennessee Supreme Court and remanded to the trial court for a new trial or sentencing hearing. Mr. Davis advised the petitioner that if he entered a plea of nolo contendere, his conviction in the Edmonds case would have absolutely no effect upon the Teague murder case if the Tennessee Supreme Court did in fact reverse his conviction or order a new sentencing hearing. The following morning the petitioner discussed the matter with his family; and, relying upon the advice given him by Mr. Davis, entered a plea of nolo contendere to the offense of accessory before the fact to second degree murder. The petitioner was sentenced to serve a term of ten (10) years in the state penitentiary.

Mr. Davis' advice to the petitioner was based upon a faulty reading of Rule 11(e)(6), Tenn.R.Crim.P. He could not recall nor did his file reflect that he consulted any other source before advising the petitioner regarding the future effect of a conviction following a plea of nolo contendere.

The Tennessee Supreme Court subsequently affirmed the petitioner's conviction for murder first degree in the Teague murder case, but the Court remanded the case to the trial court for a new sentencing hearing. *State v. Teague,* 645 S.W.2d 392 (Tenn.1983). A second sentencing hearing was conducted as ordered by the Court, and the petitioner was again sentenced to the extreme penalty of death by a jury of his peers. The Tennessee Supreme Court affirmed the death sentence following a direct appeal pursuant to T.C.A. § 39-2-205. *State v. Teague,* 680 S.W.2d 785 (Tenn.1984). The United States Supreme Court denied the petitioner's petition for writ of certiorari. *Teague v. Tennessee,* 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 662 (1985).

Prior to the second sentencing hearing the trial court was advised that the State of Tennessee would rely upon a new aggravating circumstance, namely, the petitioner had been convicted of a felony involving the use or threat of violence to the person. T.C.A. § 39-2-203(i)(2). The prior felony alluded to by the assistant district attorney generals was the petitioner's conviction in the Edmonds case.

Messrs. Davis and Batson objected to the use of the petitioner's conviction in the Edmonds case on the ground the petitioner had entered a plea of nolo contendere, and, according to Rule 11(e)(6), Tenn.R.Crim.P., the conviction could not be used for any purpose. When the trial court overruled the objection, and held that the judgment of conviction following the petitioner's plea of nolo contendere could be used as an aggravating circumstance, Messrs. Davis and Batson realized for the first time that Mr. Davis' interpretation of Rule 11(e)(6), Tenn.R.Crim.P. was erroneous. According to Mr. Davis, the petitioner immediately "wanted to know why he let him do it [enter the plea of nolo contendere] if it was gonna be used against him at some point."

Mr. Davis stated at the evidentiary hearing that the advice he gave to the petitioner, shortly before the petitioner entered the plea of nolo contendere, was "[t]he worst [advice] I ever gave anybody."

Although the defendant elected not to testify at the hearing on the advise of counsel, there is strong circumstantial evidence contained in the record that the petitioner would not have entered a plea of guilty or nolo contendere in the Edmonds

case if his conviction could be used for any purpose in the Teague case.

### EFFECTIVENESS OF COUNSEL

■ The trial court, pursuant to the applicable statutory mandate, prepared comprehensive findings of fact and conclusions of law following the evidentiary hearing. *See* T.C.A. § 40–30–118(b). Regarding the performance of counsel, the trial court concluded:

Petitioner's original counsel did give him [the petitioner] bad advice, when they advised him his plea of nolo contendere could not be used in subsequent proceedings. It was not a correct statement of the law. The conviction resulting from his plea of nolo contendere was used against him at his subsequent sentencing hearing for the murder of Terri Teague.... Mr. Davis and Mr. Batson both testified that their advice to Raymond Teague would have been different had they known the plea could or would have been used at a subsequent hearing....

This Court agrees with the trial court's conclusion that the advice given by Mr. Davis was clearly erroneous, and, as a consequence, the services rendered and the advice given the petitioner fell well below "the range of competence demanded of attorneys in criminal cases." *Baxter v. State*, supra at 936.

■ The right to the assistance of counsel, as mandated by Art. I, § 9 of the Tennessee Constitution, means the right to the *effective* assistance of counsel.[2] This right has been described as the most basic and fundamental of all the constitutional rights afforded an accused in a criminal prosecution, *See Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), because it "affects ... [the accused's] ability to assert any other right he may have." *United States v. DeCoster*, 159 U.S.App.D.C. 326, 487 F.2d 1197, 1201 (1973).

In the landmark case of *Baxter v. Rose* our Supreme Court did not establish a precise formula for determining the effectiveness or ineffectiveness of attorneys in criminal cases. The Court stated it "would measure the range of competence by the duties and criteria" set forth in *United States v. DeCoster*, supra, and *Beasley v. United States*, 491 F.2d 687 (6th Cir.1974). In ruling the Court said:

We do not consider it to be either necessary or proper, that we establish any precise nomenclature or that we lay down any specific standards or guidelines. We are content to leave the matter resting on a foundation of reasonable competence as tested by the authorities as herein set out. Trial courts and defense counsel should look to and be guided by the American Bar Association's Standards relating to the Administration of Criminal Justice in general, and specifically to those portions of the Standards which relate to the Defense Function.

523 S.W.2d at 936.

In *United States v. DeCoster* the court said that counsel must conduct an appropriate investigation of the legal issues. According to the court, "the duty to investigate [legal issues] ... requires adequate legal research." 487 F.2d at 1202–1204. *See Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir.1968).

In the case *sub judice* it is obvious that Mr. Davis failed to conduct "adequate legal research" before advising the petitioner. The seriousness of the consequences, the fact the plea of nolo contendere was relatively new in Tennessee,[3] the complexity of the rule, and the fact no Tennessee appellate court had construed this portion of Rule 11 required more than a mere reading of the rule before responding to the petitioner's inquiry.

Messrs. Davis and Batson were not strangers to the criminal process. Mr.

---

2. *See*, for example, *State v. Poe*, 76 Tenn. 647, 654 (1881); *Poindexter v. State*, 183 Tenn. 193, 194, 191 S.W.2d 445 (1946); *Powell v. Alabama*, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158, 172 (1932).

3. Rule 59, Tennessee Rules of Criminal Procedure provides that the rules were to "take effect ninety (90) days subsequent to their approval by the General Assembly and the Governor." The Governor approved the joint resolution adopting the rules on April 14, 1978. Thus, the rules ,became effective on July 13, 1978.

Davis had served as the District Attorney General for Hamilton County and Mr. Batson had served as an Assistant District Attorney General for several years prior to embarking on a career in the private practice of law. Like any "lawyer[s] of ordinary training and skill in the criminal law", *Beasley v. United States,* supra, 491 F.2d at 696, they knew, or should have known, that the Federal Rules of Criminal Procedure[4] as well as the rules of procedure existing in several sister states encompassed the plea of nolo contendere. Had Mr. Davis read the Commission Comment to Rule 11, he would have discovered that Rule 11 "is substantially the same as the federal rule," and it was the feeling of the framers of the rules that "uniformity of procedure with the federal courts in procedural matters such as those contemplated under Rule 11 ... is beneficial to the public and to the legal profession."

When Mr. Davis gave the erroneous advice to the petitioner, the legal treatises, encyclopedias, and the national reporter system were replete with materials, discussions and decisions relating to the plea of nolo contendere.[5] A cursory examination of these legal resources would have provided Messrs. Davis and Batson with sufficient information to permit them to correct-ly advise the petitioner regarding the consequences of a plea of nolo contendere.

Had Mr. Davis conducted even a cursory examination of the authorities before advising the petitioner, he would have discovered that the plea of nolo contendere "is a device which the courts, in their discretion, make available to defendants in certain cases so that a judgment may be entered in favor of the government without requiring the defendant expressly to admit the charges made against him."[6] However, once the accused has entered a plea of nolo contendere, and the court has accepted the plea and sentenced the accused, it "has all the effects of a plea of guilty insofar as the purposes of the case are concerned";[7] and it is as much a conviction as a jury-returned guilty verdict[8] with one exception: a conviction predicated upon a plea of nolo contendere cannot be used against the accused as an admission in any civil suit for the same act.[9]

A cursory examination of the authorities would have further revealed that a conviction following a plea of nolo contendere constitutes a "first" offense within the meaning of a recidivist statute, and the enhancement of punishment for the commission of a subsequent offense is permissible.[10] Also, the punishment for a convic-

---

**4.** The plea of nolo contendere was apparently a part of the common law in England; and the plea has been the subject of litigation in the United States Supreme Court since 1926 in the federal system. *See Hudson v. United States,* 272 U.S. 451, 452–453, 47 S.Ct. 127, 128, 71 L.Ed. 347, 348 (1926).

**5.** *See,* for example, Annotation, *Plea of Nolo Contendere or Non Vult Contendere,* 152 A.L.R. 253 (1944); Annotation, *Plea of Nolo Contendere or Non Vult Contendere,* 89 A.L.R.2d 540 (1963); 22 C.J.S. *Criminal Law* § 425(4) (1961); 21 AM. JUR.2d, *Criminal Law* § 492 (1981).

**6.** *A.B. Dick Co. v. Marr,* 95 F.Supp. 83, 101 (S.D.N.Y.1950), *appeal dismissed,* 197 F.2d 498 (2nd Cir.1952), *cert. denied,* 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 (1952), *reh'g denied,* 344 U.S. 905, 73 S.Ct. 282, 97 L.Ed. 699 (1952). In *United States v. Pannell,* 178 F.2d 98, 100 (3rd Cir.1949), the court described the plea as "a sometimes useful device by which a defendant may admit his liability to punishment without being embarrassed in other proceedings."

**7.** *Bell v. Commissioner,* 320 F.2d 953, 956 (8th Cir.1963). *See Jacobsen v. United States,* 260 F.2d 122, 123 (8th Cir.1958).

**8.** *Nardone v. Mullen,* 113 R.I. 415, 322 A.2d 27 (1974); *State v. Gobern,* 423 A.2d 1177, 1179 (R.I.1981); Annotation, *Plea of Nolo Contendere or Non Vult Contendere,* 89 A.L.R.2d 540, 604 (1963).

**9.** Tenn.R.Crim.P. 11(e)(6). *See A.B. Dick Co. v. Marr,* supra at 101; *Tseung Chu v. Cornell,* 247 F.2d 929, 938 (9th Cir.1957), *cert. denied,* 355 U.S. 892, 78 S.Ct. 265, 2 L.Ed.2d 190 (1957); *Bell v. Commissioner,* supra at 956.

**10.** *See State v. Buggs,* 219 Kan. 203, 547 P.2d 720 (1976) [prior rape conviction following a plea of nolo contendere plea used to enhance the punishment for a weapons offense]; *State v. Staples,* 100 N.H. 283, 124 A.2d 187 (1956) and *State v. Orosco,* 199 Neb. 532, 260 N.W.2d 303 (1977) [prior conviction for DUI following a plea of nolo contendere used to support the enhancement of punishment for a subsequent DUI offense]; *Maxwell v. State,* 336 So.2d 658 (Fla.Dist.Ct.App.1976) [prior conviction for a drug offense following a plea of nolo conten-

tion following such a plea can be enhanced if it constitutes a subsequent offense within the meaning of a recidivist statute. *See* 22 C.J.S. Criminal Law § 425(4) (1961). In addition, a conviction based upon a plea of nolo contendere can be used for the purpose of impeaching the accused as a witness. *Tseung Chu v. Cornell*, supra, 247 F.2d at 938; *Lewis v. State*, 258 Ark. 242, 523 S.W.2d 920, 921–922 (1975).

The State argues that the erroneous advice of counsel does not constitute the ineffective assistance of counsel when the law regarding an issue is uncertain. *See Rutledge v. Wainwright*, 625 F.2d 1200, 1203–1204 (5th Cir.1980), *cert. denied*, 450 U.S. 1033, 101 S.Ct. 1746, 68 L.Ed.2d 229 (1981). The Supreme Court of this State reached this result in *Howell v. State*, 569 S.W.2d 428 (Tenn.1978), where the accused entered pleas of guilty and "agreed to the life sentences under mistaken advice as to their true effect." 569 S.W.2d at 435. In ruling the late Mr. Justice Henry, speaking for a unanimous court, said:

> Both the trial judge and defense counsel were dealing with what the majority opinion of this Court in *Farris v. State*, 535 S.W.2d 608 (Tenn.1976), classified as a "highly specialized area" of the law, and one in which "few practicing attorneys, otherwise knowledgeable in criminal law, or judges at any level" have a complete understanding. We cannot, and do not, hold, under these circumstances, that counsel was incompetent.

569 S.W.2d at 435.

We are of the opinion the authority cited by the State of Tennessee and the decision of our Supreme Court in *Howell* are distinguishable upon the facts. In the case *sub judice* Mr. Davis, as he readily admitted, simply misread Rule 11(e)(6). As heretofore noted, there were ample treatises and case law which, if consulted, would have prevented this egregious error.

It is elementary that the denial of the effective assistance of counsel may result from the erroneous advice of counsel.[11] In *Iaea v. Sunn* the court said:

> Because "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney," ... *counsel have a duty to supply criminal defendants with necessary and accurate information.* Though a mere inaccurate prediction, standing alone, would not constitute ineffective assistance, *see McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970); *Wellnitz v. Page*, 420 F.2d 935, 936 (10th Cir.1970) (per curiam), the gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys.

800 F.2d at 865 (emphasis added).

We conclude, as did the trial court, that the petitioner established by a preponderance of the evidence that Mr. Davis committed an egregious error in advising the petitioner that his conviction following the plea of nolo contendere could not be used for any purpose in the Teague murder case; and the error was so serious that the petitioner was denied the effective assistance of counsel contemplated by the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution.[12] In summary, the petitioner has established that the services rendered and advice given by Mr. Davis fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, supra at 936.

## THE PREJUDICE REQUIREMENT

■ In its findings of fact and conclusions of law the trial court concluded that

dere used to enhance a subsequent drug offense]; 39 AM.JUR.2d, *Habitual Criminals* § 7 (1968), where it is said that "[w]here followed by judgment or sentence ..., a plea of ... nolo contendere is generally held to amount to a conviction under habitual criminal statutes."

11. *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979); *O'Tuel v. Osborne*, 706 F.2d 498 (4th

Cir.1983); *Kennedy v. Maggio*, 725 F.2d 269 (5th Cir.1984); *Iaea v. Sunn*, 800 F.2d 861 (9th Cir. 1986).

12. *See Strader v. Garrison*, supra; *O'Tuel v. Osborne*, supra; *Kennedy v. Maggio*, supra; *Iaea v. Sunn*, supra.

the petitioner was not prejudiced by the erroneous advice given by Mr. Davis. Regarding this requirement the trial court stated:

> The conviction resulting from his plea of nolo contendere was used against him at his subsequent sentencing hearing for the murder of Terri Teague and the jury found it to be an aggravating circumstance in setting his sentence of death. Mr. Davis and Mr. Batson both testified that their advice would be different had they known the plea could or would have been used at a subsequent hearing. But, they both also stated that they left the final decision to Raymond Teague and that he did not want to go through another trial.
>
> It is a matter of speculation, whether or not Raymond Teague would have still accepted the State's offer to plead nolo contendere to the lesser included offense, if his counsel had advised him that it could be used against him. In his desire to avoid trial and to escape the jeopardy of possibly another death sentence, he might have decided to take his chances that it would never be used against him. We did not have the benefit of Raymond Teague's testimony on this point. If the trial had proceeded, there is a strong likelihood that Raymond Teague would have been found guilty of the murder of Edmonds, despite petitioner's counsel's assertions to the contrary.

However, during the course of the hearing, the trial court stated on several occasions that the petitioner had been prejudiced as a result of the erroneous advice given by Mr. Davis.

This Court is of the opinion that the evidence contained in the record preponderates against the finding of the trial judge. The petitioner established that he was prejudiced as a result of the ineffective assistance of counsel rendered by Mr. Davis. In other words, the petitioner has established that there was a "reasonable probability that, but for counsel's errors, he ... would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59, 106 S.Ct. at 370, 88 L.Ed.2d at 210.

The record reflects that the proposed plea bargain agreement was made on the eve of the trial while Messrs. Davis and Batson were vigorously preparing for trial. Apparently Mr. Davis was in the office of the district attorney general examining evidence when the offer of settlement was made.

When Mr. Davis approached the petitioner in the Hamilton County Jail and advised him of the proposed plea bargain agreement, the petitioner did not accept, nor did he indicate he would accept, the offer of settlement. To the contrary, the petitioner inquired of Mr. Davis what effect, if any, a conviction for accessory before the fact to second degree murder following a plea of nolo contendere would have upon the Teague murder case if the petitioner was granted a new trial or sentencing hearing. After Mr. Davis had erroneously advised the petitioner that a conviction predicated upon a plea of nolo contendere would have no adverse effect upon the Teague murder case, the petitioner did not give Mr. Davis an answer regarding the acceptance of the proposed plea bargain. The petitioner's decision to accept the offer of settlement wasn't made known until the next morning, the date the trial was to commence.

There is strong circumstantial evidence contained in the record that the petitioner would not have accepted the proposed plea bargain agreement, entered the plea of nolo contendere, and permitted a judgment of conviction for accessory before the fact to second degree murder and a sentence of ten (10) years to be entered against him had he known that the conviction could be used as an aggravating circumstance at the second sentencing hearing in the Teague murder case. As heretofore indicated, the petitioner had been clearly misinformed about the consequences of his plea and subsequent conviction.

The petitioner had nothing to gain by entering a plea of nolo contendere or plea of guilty in the Edmonds case, absent the erroneous advice of counsel, since counsel had almost assured the petitioner that the Teague conviction would be reversed by the Supreme Court. Common sense tells us it would have been better for the petitioner to go to trial and take his chances

that a jury would acquit him. Mr. Batson, an experienced criminal defense attorney, expressed the opinion that it was highly unlikely a jury would have sentenced the defendant to death had he gone to trial. Moreover, if the petitioner's goal was to escape a second death sentence or take advantage of the ten-year offer, the nature of the plea wouldn't have mattered to the petitioner.

The trial court attempts to buttress its finding in this regard by stating that counsel "left the final decision to Raymond Teague and that he did not want to go through another trial." This finding and reasoning is predicated upon a false premise. It must be remembered that the petitioner had been misinformed and was laboring under a false impression when he made the decision to accept the plea bargain agreement and enter the plea of nolo contendere rather than go to trial.

Again, the trial court's finding to the effect "[i]t is a matter of speculation whether or not Raymond Teague would have accepted the State's offer to plead nolo contendere to the lesser offense, if his counsel had advised him that it [the conviction] could be used against him," is not supported by the facts, or any reasonable inferences which may be drawn from the facts contained in the record. As the trial court stated, this finding is based on sheer speculation. As previously indicated, there is strong circumstantial evidence that the petitioner would not have accepted the offer if he was properly advised regarding the effect of a conviction based upon a plea of nolo contendere.

Like a verdict in a criminal prosecution, the findings of fact of the trial judge in a post-conviction proceeding may not be based solely upon conjecture, guess, or speculation. *See State v. Rucker*, 174 Tenn. 569, 574, 129 S.W.2d 208, 210 (1939). Such findings must be based upon the evidence adduced at the sentencing hearing, the records in the case, and any reasonable inferences which may be drawn therefrom.

The trial court also alludes to the fact that the petitioner did not testify at the evidentiary hearing. While the law permits the trier of fact in this jurisdiction to infer that a "missing witness," such as the petitioner in this case, if called to testify, would testify adversely to the position taken in his petition for post-conviction relief, *see Harless v. State*, 189 Tenn. 419, 422, 225 S.W.2d 258, 259 (1949); *Ford v. State*, 184 Tenn. 443, 449, 201 S.W.2d 539, 541 (1945); *Brown v. State*, 1 Tenn.Crim.App. 294, 299, 441 S.W.2d 485, 487 (1969), there were good, plausible and adequate reasons why counsel did not call the petitioner to the witness stand during the evidentiary hearing. First, the elements which the petitioner was required to establish, namely, a deficient performance by counsel and prejudice, had clearly been established by other evidence. Second, any testimony the petitioner gave could be used against him at any subsequent prosecution if he prevailed in the trial court or this court on the contentions advanced. As a consequence, this inference is greatly diluted in strength, if not explained away. No attorney worth his salt would have called the petitioner as a witness under these circumstances.

The trial court's finding that "(i)f the trial had proceeded, there is a strong likelihood that Raymond Teague would have been found guilty of the murder of Edmonds," is likewise based upon speculation, not fact. *See Rucker v. State*, supra; *State v. Jenkins*, 733 S.W.2d 528, 531 (Tenn.Crim.App.1987). Neither the trial judge nor a jury heard the witnesses and viewed the evidence that would have been presented against Teague had he gone to trial in the John Mark Edmonds murder case. There are many intangible and variable factors which enter into the trial of a lawsuit. These factors include, but are not limited to, the composition of the jury, the availability of witnesses, the credibility of the witnesses, the rulings of the trial judge, the special instructions which the trial court may or may not give, and the performance of counsel for the respective parties. Any lawyer with trial experience knows that these, as well as other intangible and variable factors, can fluctuate from day to day. Many times trial judges and trial counsel with years of experience reach the wrong conclusion when speculating on

the verdict a jury will return in a given case.

▇ The trial court's insistence that the assistant district attorney state for the record what the State of Tennessee could have proven had the petitioner elected to go to trial in the Edmonds case does not support the trial court's finding in this respect. It has long been the rule in this jurisdiction that statements made by counsel, absent a stipulation between the parties, do not constitute evidence. *See State v. Dobbins,* 754 S.W.2d 637, 640 (Tenn. Crim.App.1988); *State v. Burton,* 751 S.W.2d 440, 450 (Tenn.Crim.App.1988); *Davis v. State,* 673 S.W.2d 171, 173 (Tenn. Crim.App.1984); *Trotter v. State,* 508 S.W.2d 808, 809 (Tenn.Crim.App.1974). There was no stipulation regarding the statements made at the evidentiary hearing; and the narration made by the assistant district attorney did not constitute evidence of what a jury would have found had the petitioner elected to go to trial.

In summary, the petitioner has established that but for counsel's erroneous advice, he would not have entered a plea of nolo contendere, and insisted on going to trial. This satisfied the prejudice requirement enunciated in *Williams v. State,* 599 S.W.2d at 279, and *Hill v. Lockhart,* 474 U.S. at 59, 106 S.Ct. at 370, 88 L.Ed.2d at 210.[13]

### GUILTY PLEA PROCEEDINGS

The petitioner contends that his plea of nolo contendere of June 15, 1982, was not voluntarily, understandingly and intelligently entered. In support of this contention the petitioner argues that when he entered his plea of nolo contendere, the trial court failed to properly inquire of or advise him of the following:

a.) his privilege against self-incrimination;

b.) the implication of his plea of nolo contendere;[14]

c.) the nature of the charge pending against him;

d.) the elements of the offense;

e.) the mandatory minimum and maximum penalty provided by law for the lesser included offense to which the petitioner entered the plea; and whether the petitioner understood the penalties that could be imposed for the offense;

f.) the consequences of a plea of nolo contendere and conviction in subsequent criminal prosecutions or hearings or whether the petitioner understood the consequences of his plea and subsequent conviction; *See State v. Evans,* supra, or

g.) adequately explain the constitutional right to confront and cross-examine witnesses, which the petitioner was required to waive as a condition to entering his plea of nolo contendere.

In addition, the petitioner argues that the trial court failed to establish a factual basis for or inquire into the accuracy of his plea of nolo contendere.

▇ The State argues that the merits of this issue were previously raised, considered and rejected by our Supreme Court, *See State v. Teague,* 680 S.W.2d 785, 789 (Tenn.1984) *cert. denied,* 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 662 (1985); and, as a result, this ground is not a proper subject for post-conviction relief.[15] Consequently, before addressing this issue on the merits, we must determine whether it has been "previously determined" within the meaning of T.C.A. § 40–30–112. In *State v. Teague,* supra, our Supreme Court said:

Defendant further argues that the nolo contendere plea was invalid because the judge accepting the plea failed to follow the requirements of Rule 11(c) of the

---

**13.** *See O'Tuel v. Osborne,* supra; *Kennedy v. Maggio,* supra; and *Iaea v. Sunn,* supra.

**14.** The failure of the trial court to explain the collateral consequences of a conviction will not render a plea of nolo contendere involuntary. *See State v. Evans,* 669 S.W.2d 708, 712–713 (Tenn.Crim.App.1984).

**15.** T.C.A. § 40–30–112; *State v. Miller,* 668 S.W.2d 281, 284–285 (Tenn.1984); *Forrest v. State,* 535 S.W.2d 166, 167 (Tenn.Crim.App. 1976); *Givens v. State,* 702 S.W.2d 578, 580 (Tenn.Crim.App.1985); *Harvey v. State,* 749 S.W.2d 478, 479 (Tenn.Crim.App.1987). *See State v. McClintock,* 732 S.W.2d 268, 272 (Tenn. 1987); *Swanson v. State,* 749 S.W.2d 731, 733 (Tenn.1988).

Tennessee Rules of Criminal Procedure to insure the defendant understood the consequences of the plea. This issue was not raised in the trial court until the motion for new trial was filed. We do have in the record, as an exhibit to the motion for new trial, the colloquy between the trial judge, the defendant, and defendant's counsel at the time the plea of nolo contendere was accepted. It is apparent from the colloquy that the plea was voluntary and that the defendant understood that he was losing his right to a jury trial and cross-examination. Further, *it contains assurances of the defense counsel that the defendant fully understood what he was doing.* While the trial judge could have paid more attention to detail and followed exactly the admonition of Rule 11, the purposes of the rule were carried out by the procedure followed, that is, insuring the defendant made an informed plea and that plea agreements are brought out in open court.

680 S.W.2d at 789 [Emphasis added].

Our Supreme Court commented upon this passage from *Teague II* in *Rounsaville v. Evatt*, 733 S.W.2d 506, 507–508 (Tenn. 1987).

As noted in *Teague II* and *Rounsaville*, this issue was first raised as an issue in the motion for a new trial. While counsel attached a copy of the sentencing hearing proceedings in the John Mark Edmonds case as an exhibit to the motion, no evidentiary hearing was conducted or affidavits attached to the motion which related to the advice Mr. Davis had given the petitioner before he entered his plea of nolo contendere. In other words, *the Supreme Court was not aware that Mr. Davis had advised the petitioner his plea of nolo contendere could not be used against him in the Teague murder case if the Supreme Court remanded the Teague murder case for a new trial or sentencing hearing.* To the contrary, the transcript makes it appear, as the Court noted, that counsel had correctly advised the petitioner, and the

petitioner was fully aware of the nature and circumstances of his act in entering the plea of nolo contendere. Mr. Davis told the trial court during the sentencing hearing in the Edmonds case that "(w)e have fully explained to him [the petitioner] what the alternatives are as provided in the petition to enter this plea of nolo contendere. *He fully understands it I believe. Both Mr. Batson and I have been over it with him, explained to him the consequences of it and the whole gamut of what he's doing.* He does enter this plea willingly I believe, and knowingly and of his own free will and accord although *he ... requested me to advise the Court that he neither admits nor denies under plea the allegations as made by the indictments.*" [Emphasis added]

In view of the peculiar circumstances presented by this case, and the misleading nature of the record considered by the Supreme Court, we do not believe that this issue has been "previously determined" within the meaning of T.C.A. § 40–30–112. *See Swanson v. State*, 749 S.W.2d 731 (Tenn.1988).

■ Addressing this issue on the merits, the evidence contained in the record establishes by a preponderance of the evidence that the petitioner's plea of nolo contendere was not voluntarily, understandingly and intelligently entered in view of the erroneous advice given to the petitioner by counsel prior to entering the plea.[16] In *Kennedy v. Maggio*, 725 F.2d 269 (5th Cir.1984), the court concluded:

Our determination that ... counsel was ineffective mandates the conclusion that his plea of guilty was not "voluntary" in the constitutional sense. A plea of guilty [like a plea of nolo contendere] must be knowing and intelligent to pass constitutional muster [*Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)]. Because such a plea

**16.** *Kennedy v. Maggio*, 725 F.2d at 273. In the case *sub judice* the advice counsel gave the petitioner may be described as a "gross mischaracterization" of the right of the State of Tennessee

to use a conviction, based upon a plea of nolo contendere, at a subsequent trial or hearing. *See Iaea v. Sunn*, 800 F.2d at 865.

amounts to an admission of all of the elements of the crime charged, "it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Johnson v. Zerbst*, 304 U.S. 458, 466, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). It is elementary that a plea entered in reliance on the defendant's attorney's patently erroneous statement of the law in relation to the facts does not meet this standard. 725 F.2d at 273.

The record of the sentencing hearing reveals that the trial judge did not explain, mention or allude to the privilege against compulsory self-incrimination when the petitioner entered his plea of nolo contendere. This deficiency was not addressed in *Teague II*.[17] Moreover, the State does not address the merits of this deficiency in its brief.

In *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court, noting that several federal constitutional rights are waived when an accused enters a plea of guilty, held that the record of a sentencing hearing must reflect the court explained and the accused understood and voluntarily waived his right to a trial by a jury of his peers, the right to confront his accusers, and the privilege against compulsory self-incrimination before it can be judicially determined that an accused voluntarily, understandingly and intelligently entered the guilty plea. The appellate courts of this State have religiously followed *Boykin*. *Rounsaville v. Evatt*, supra; *State v. Gilam*, 732 S.W.2d 600 (Tenn.1987); *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977).

In *State v. Mackey*, supra, where the trial court failed to comply with the requirements of *Boykin*, our Supreme Court stated: "[W]e are not content to allow the issue to rest there. This Court in the exercise of its supervisory power to insure that the courts of this State afford fairness and justice to defendants in criminal cases may require stricter standards than those mandated by the *Boykin* decision." 553

S.W.2d at 340–341. The Court then set forth the procedure that trial courts are to utilize when an accused expresses a desire to enter a guilty plea. Later, in *Rounsaville v. Evatt*, supra, the Court said it had "warned in *Mackey* that we were mandating stricter standards than those required in *Boykin*." 733 S.W.2d at 508. We are of the opinion that the requirements mandated by *Boykin*, *Mackey* and Rule 11, Tenn. R.Crim.P., are applicable when an accused seeks to enter a plea of nolo contendere.

A plea of nolo contendere admits every essential element of the offense, which is properly alleged in the charging instrument; and it is tantamount to an admission of guilt for purposes of the case in which the plea is entered. Once the plea has been entered, and the trial court has determined that it has been made voluntarily, nothing is left but to render judgment since there is no issue of fact. *Lott v. United States*, 367 U.S. 421, 426, 81 S.Ct. 1563, 1567, 6 L.Ed.2d 940, 944 (1961). Moreover, a conviction following a plea of nolo contendere "has all the effects of a plea of guilty insofar as the purposes of the case are concerned." *Bell v. Commissioner*, 320 F.2d 953, 956 (8th Cir.1963). *See Jacobsen v. United States*, 260 F.2d 122, 123 (8th Cir.1958). The only difference of substance is that a conviction following the entry of a plea of nolo contendere cannot be used against the accused as an admission in any civil suit for the same act. Tenn.R.Crim.P. 11(d).

The petitioner's plea of nolo contendere is constitutionally infirm, and his plea and conviction must be set aside. *Rounsaville v. Evatt*, supra; *State v. Gilam*, supra; *State v. Mackey*, supra. In *Rounsaville*, where the trial court also failed to advise the accused in open court, of his constitutional privilege against compulsory self-incrimination, our Supreme Court said:

> [T]he trial judge's failure to address defendant personally in open court and inform him of the constitutional privilege against self-incrimination and ascertain

**17.** The Supreme Court only alluded to the right to trial by jury and the confrontation of witness-

es. 680 S.W.2d at 789.

that he fully understood the significance of his waiver of that right was an error of constitutional proportion and request that the guilty pleas and convictions thereon be set aside as void.

733 S.W.2d at 509.

■■■ The petitioner's claim that the trial court did not adequately advise him of his right to confront the witnesses against him is without merit.[18] During the course of the sentencing hearing, the trial court made references to the petitioner's written request for permission to enter a plea of nolo contendere, which contained an acknowledgement of the rights the petitioner was waiving, and asked the petitioner: "[Y]ou realize by doing so [entering the plea of nolo contendere] *you don't get to face witnesses,* you don't have a trial, and we won't have any appellate review of this case, and this is the way you want to handle it of your own free will. Is that what you're telling me today?" [Emphasis added]. The petitioner responded affirmatively. This was sufficient to advise the petitioner of this right.

The remaining points the petitioner argues regarding this issue, while mandated by Rule 11, Tennessee Rules of Criminal Procedure, and *State v. Mackey,* 553 S.W.2d 337, 341 (Tenn.1977), are not cognizable in a post-conviction proceeding. These grounds are not constitutionally mandated.[19] In *Housler v. State,* 749 S.W.2d 758 (Tenn.Crim.App.1988), Judge Scott, speaking for a unanimous court said:

> In the recent cases of *Rounsaville v. Evatt,* 733 S.W.2d 506, 508 (Tenn.1987), and *State v. Gilam,* 732 S.W.2d 600, 601 (Tenn.1987), our Supreme Court held that full compliance with *Mackey* is a prerequisite to the acceptance of a valid guilty plea. However, each of those cases dealt with the failure to inform the defendant about the privilege against self incrimination—[a] right guaranteed by the Fifth Amendment of the United States Consti-

tution and Article I, § 9 of the Tennessee Constitution.

> As previously noted, the omitted dialogue required by *Mackey* is not constitutionally mandated. Rather, it is required only because our Supreme Court, in the exercise of its supervisory power over the inferior courts, says it is. T.C.A. § 16–3–501. Thus, while the broad language of *Rounsaville* and *Gilam* would indicate that failure to fully comply with *Mackey* can be the basis for relief, that relief cannot be granted in a post-conviction relief proceeding, since only errors of constitutional dimension are cognizable in such proceedings ... The proper forum for redress when non-constitutional requirements are ignored by the trial judge is direct appeal.

749 S.W.2d at 760–761.

However, we echo the sentiments expressed by Mr. Justice Cooper that "the trial judge could have paid more attention to detail and followed exactly the admonitions of Rule 11" and the mandates of *State v. Mackey,* supra. *State v. Teague,* 680 S.W.2d at 789.

## FAILURE TO DISCLOSE EXCULPATORY EVIDENCE

The petitioner contends the State of Tennessee failed to provide him with certain exculpatory evidence. In view of our disposition this issue is rendered moot. Any decision regarding this issue would be advisory in nature.

After this cause is remanded to the trial court, the petitioner has the right to file a motion for exculpatory evidence. The petitioner should apprise the State of Tennessee of the precise nature of the exculpatory evidence he seeks.

---

**18.** In *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), the United States Supreme Court ruled that the record of the sentencing hearing must show on its face that the accused waived his constitutional right to confront his accusers. *See Pointer v. Texas,*

380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

**19.** T.C.A. § 40–30–105; *State v. McClintock,* 732 S.W.2d 268, 271 (Tenn.1987); *See Housler v. State,* 749 S.W.2d 758, 760–761 (Tenn.Crim.App. 1988).

## CONCLUSION

This Court concludes that the petitioner established by a preponderance of the evidence that he was denied the effective assistance of counsel when he entered his plea of nolo contendere, and his reliance on the advice of counsel enured to his prejudice. The petitioner has further established that his plea of nolo contendere was not voluntarily, understandingly, and intelligently entered. Therefore, the petitioner's conviction is void.

The judgment of the trial court denying the petitioner relief from his conviction is reversed, and the petitioner's plea of nolo contendere and the judgment of the trial court sentencing the petitioner to serve a term of ten (10) years in the state penitentiary are set aside and vacated.

This cause is remanded to the trial court for a new trial or other disposition not inconsistent with this opinion.

DUNCAN, P.J., and DAUGHTREY, J., concur.