IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 12, 2003

## DEDRICK PATTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-52458    James K. Clayton, Jr., Judge**

_____

**No. M2003-00126-CCA-R3-PC - Filed December 23, 2003**

_____

The petitioner, Dedrick Patton, appeals from the denial of his petition for post-conviction relief. The issues presented for review are as follows: (1) whether he was denied the effective assistance of counsel; (2) whether he knowingly and voluntarily entered his plea of guilt; (3) whether a sufficient factual basis was entered to support the plea; (4) whether there was a violation of the right to due process; and (5) whether there was a racially biased grand jury. The judgment is reversed, the conviction set aside, and the cause remanded for trial.

**Tenn. R. App. P. 3; Judgment of the Trial Court Reversed and Remanded**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Dedrick Patton, Henning, Tennessee, pro se.[1]

Paul G. Summers, Attorney General & Reporter; Kim R. Helper, Assistant Attorney General; William C. Whitesell, District Attorney General; and John W. Price, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In 2001, the petitioner entered a plea of guilt to one count of possession with intent to sell less than .5 grams of cocaine. See Tenn. Code Ann. § 39-17-417. Although the state asserted that the petitioner was a Range II offender, the plea agreement provided for a Range I sentence of four years. On April 25, 2002, the petitioner filed a petition for post-conviction relief alleging, among other things, that he was denied the effective assistance of counsel and that the guilty plea was neither knowingly nor voluntarily made.

_____

[1]After the briefing in this case was complete, this court granted appellate counsel's motion to withdraw as counsel of record for the petitioner.

At the evidentiary hearing, the petitioner testified that he had served approximately eight months of his four-year sentence. He claimed that he was on "a cocaine binge" after being arrested because he was afraid of being returned to prison for violating his parole. He contended that because he had used cocaine every day from the time of his arrest for possession until the night before his guilty plea, he "couldn't think." The petitioner claimed that before his guilty plea, he had informed his attorney of his cocaine use. He remembered that he had taken a drug screen after requesting a few more days on release before reporting to serve his sentence. He failed the test. It was his assertion that even though he had only one prior felony conviction, his trial counsel erroneously believed he qualified for a Range II rather than a Range I sentence and, in consequence, lost bargaining power for more lenient treatment by the state. According to the petitioner, his counsel informed him that a Range II sentence would have qualified him for a 12- to 20-year sentence. The petitioner insisted that had he known that he qualified as Range I, he would not have accepted the proposed plea agreement of four years, even at the Range I classification, and would have insisted on a trial.

The petitioner also alleged that his trial counsel failed to timely acquire an audiotape which was in the possession of the state and which, according to trial counsel, recorded the drug transaction between the petitioner and a confidential informant and led to the charge at issue. While acknowledging that he had expressed satisfaction with his trial counsel's performance at the submission hearing, the petitioner explained that he had changed his mind after discovering deficiencies in the performance of his counsel. The petitioner claimed to be innocent of the crime and contended that he simply had arranged to meet someone who had paged him and offered to sell him some clothes in a Food Lion parking lot. The petitioner denied that he had cocaine in his possession and contended that the $450.00 in his pocket was from a cashed paycheck.

On cross-examination at the evidentiary hearing, the petitioner admitted that he had been previously incarcerated for selling cocaine and acknowledged that at the time of his plea, he was under the mistaken belief that he might have had more than one felony on his record. The petitioner pointed out that he was confused about the number of his prior crimes because of his cocaine use. He conceded that in 1993 and in 1994, he had been charged with two other felonies but was unaware of the nature of their dispositions at the time of the plea in question.

Trial counsel recalled that the petitioner had asked for "a few days" before reporting to serve his sentence and the state had consented to the request on the condition that the petitioner pass a drug screen. According to trial counsel, the petitioner, when informed of the state's position, commented that he might not pass. Trial counsel stated that the petitioner had nothing to lose by taking the test and failing. According to counsel, he had "a few days off" to gain. It was his opinion that the petitioner "had his mental faculties about him to where he understood the plea, understood the consequences of the plea, and [that] it was a knowing, voluntary, and intelligent decision to enter into that plea bargain." Trial counsel stated that if he had believed the petitioner had been "impaired," he would have brought that to the attention of the trial court: "[I]f I had thought at any point that his judgment was clouded by any drugs that he had taken, then I would not have allowed him to enter that plea."

-2-

Trial counsel acknowledged, however, that he had informed the petitioner that his prior record qualified him to be within Range II and that the plea bargain at Range I "was eight years less than the minimum I expected him to receive if we went to trial and lost." Trial counsel commented, "[T]hat [was] an error on my part because even though he should have known, I should have known as well [and] . . . should have been able to give him accurate advice as to what his exposure was."

Trial counsel also conceded that the petitioner insisted on having the state's audiotape of the drug transaction, even after the plea. Trial counsel acknowledged that he had no recollection of the specific facts regarding the transaction and while claiming that it was his practice to listen to a tape-recorded transaction as a part of his routine investigation, he had no recollection of having done so in this instance. Trial counsel also pointed out that, in his opinion, it was impossible to lift a fingerprint from a plastic baggie without destroying the baggie.

Trial counsel noted that 56.4 grams of cocaine were involved in the arrest and possession of cocaine in excess of 26 grams "carrie[d] eight to ten years." When asked on cross-examination whether he should have "continued [his] investigation with regard to [the petitioner's prior] record," trial counsel candidly acknowledged, "I should have done it no matter what." He also conceded that as of the day of the evidentiary hearing, he was unaware of whether the petitioner qualified as a Range I or II offender. Trial counsel explained, however, that whether the petitioner was Range I or II, he would have still recommended acceptance of the offer of four years under Range I.

Detective Nick Watson of the LaVergne Police Department testified that at the time of the petitioner's arrest, there was no cocaine on his person but it was found underneath the backseat of his vehicle. According to the detective, a confidential informant had claimed that he had been given a sample by the petitioner just before the arrest and showed it to an undercover officer who "gave us the take down word." The detective agreed that the tape-recording contained no information about a drug transaction and that there was no marked money involved in the offense. The extent of the state's evidence was that the confidential informant had talked with the petitioner, had received a sample of the cocaine, and had then showed it to the undercover officer.

Detective Ed McKenna, the undercover officer involved in the transaction, testified that he had arranged with the petitioner to meet him on the date of the offense and that the confidential informant approached the petitioner's vehicle and then returned to his own vehicle with some cocaine in possession. Detective McKenna recalled that he had arranged for the informant to purchase three ounces of cocaine from the petitioner.

At the conclusion of the evidentiary hearing, the post-conviction court determined that the petitioner was not under the influence of cocaine at the time he entered his plea of guilt. While acknowledging that trial counsel was unaware of whether the petitioner qualified as a Range I or II offender, the court expressed satisfaction that trial counsel had most likely explained what qualified the petitioner as a Range II offender, implying that the petitioner should have known the nature and extent of his prior record. The court described the state's Range II allegation as "an honest mistake"

and reasoned that trial counsel would have recommended the plea agreement whether petitioner qualified as a Range I or a Range II offender. The court concluded that because the NCIC report included two prior felony charges, even though there was no disposition shown, trial counsel was not obliged to have determined whether those two charges had resulted in felony convictions.

I

Initially, the petitioner contends that his trial counsel was ineffective by failing to notify the trial court when the pre-plea drug screen yielded a positive result. The petitioner also claims that his trial counsel was ineffective for failing to review in advance of the plea the audiotape made by the confidential informant. His final allegation is that his trial counsel failed to accurately determine his prior number of felony convictions so as to properly advise of the possible range of sentence.

In a post-conviction proceeding, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). As to guilty pleas, the petitioner must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

-4-

In this instance, the trial court accredited the testimony of trial counsel who determined that the petitioner was not under the influence of drugs at the time he entered his plea of guilt. The content of the submission hearing supports that conclusion. Although the drug screen eventually yielded a positive result for cocaine in the petitioner's blood stream, it does not necessarily follow that he was unable to enter a knowing and voluntary plea on that basis. Moreover, the petitioner neither established the level of the illegal drugs in his system as detected by the test nor otherwise offered expert testimony as to how the drug usage might have affected him and his appreciation of the circumstances. In our view, the petitioner has failed to meet his burden of clearly and convincingly establishing any deficiency on the part of trial counsel to present the issue at the submission hearing or at anytime afterward by a motion to withdraw the plea. Certainly, the evidence does not preponderate against the trial court's findings in this regard.

Next, although the record does not establish whether trial counsel actually reviewed the content of the audiotape before recommending acceptance of the plea agreement, that alone would not warrant the grant of relief. A confidential informant and an undercover police detective were involved in the transaction. Although the petitioner maintained his innocence at the evidentiary hearing, two police detectives provided testimony that strongly suggested guilt. While the illegal drug was apparently provided to the confidential informant, who did not testify, one police detective was only 30 feet away when the exchange took place and took possession of the cocaine transferred to the confidential informant. Another officer helped locate over 50 grams of cocaine in the back seat of the petitioner's vehicle. Under those circumstances, that the content of the tape did not include any incriminating evidence would not have been particularly helpful to the defense. In our view, the petitioner was unable to establish by clear and convincing evidence that he would not have entered the plea had he known trial counsel had not listened to the tape prior to recommending the plea agreement. Again, the evidence in this regard does not preponderate against the findings of the trial court.

Of greater concern is trial counsel's failure to confirm the range status of the petitioner prior to recommending the plea. While admittedly aware that the range applicable to the petitioner was a significant factor in the petitioner's willingness to accept the Range I, four-year sentence in exchange for the guilty plea, trial counsel failed to adequately investigate the prior criminal record of the petitioner so as to determine whether he qualified as a Range I or a Range II offender. Counsel conceded that it was his obligation to verify the range of the possible sentence as a means of assuring that the petitioner was fully and accurately informed before waiving his right to trial.

In Teague v. State, 772 S.W.2d 932, 934 (Tenn. Crim. App. 1988), the petitioner, who had appealed his conviction and death sentence for the first degree murder of his wife, Teresa Lynn Teague, was awaiting trial after his indictment for the murder of John Mark Edmonds. Teague's counsel on the second charge, under the mistaken belief that a nolo contendere plea would have no effect in the first case if Teague was granted a new trial, recommended the acceptance of a reduced charge and a ten-year prison sentence. Based upon that advice, Teague entered the nolo contendere plea and was found guilty of causing the death of John Mark Edmonds. Later, Teague was granted a new sentencing hearing for the murder of Teresa Lynn Teague. See State v. Teague, 645 S.W.2d

392 (Tenn. 1983). In the second sentencing hearing, the state was properly allowed to present the conviction in the Edmonds case as an additional aggravating circumstance. See State v. Teague, 680 S.W.2d 785 (Tenn. 1984); see also Tenn. Code Ann. § 39-2-203(I)(2). When Teague filed a petition for post-conviction relief seeking to set aside his conviction in the Edmonds case, his trial counsel acknowledged that his advice regarding the nolo contendere plea was "the worst I ever gave anybody." Teague, 772 S.W.2d at 935. Although Teague was denied relief by the post-conviction court, this court concluded that but for counsel's errors, he would have insisted upon a trial. Id. at 939. Judge Joe B. Jones, speaking for the panel, observed that "[i]t must be remembered that the petitioner had been misinformed and was laboring under a false impression when he made the decision to accept the plea bargain agreement and enter a plea of nolo contendere rather than go to trial." Id. at 940.

In Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997), this court ruled that erroneous advice on parole eligibility which induced a guilty plea qualified as ineffective assistance of counsel:

> Even if counsel's advice was erroneous but, nevertheless, the [petitioner] would have been wise to plead guilty, a defendant has the right to make a knowing, unwise decision. This court, or any court for that matter, cannot protect defendants from themselves when it comes decision time.

See also Donald McArthur Carver v. State, No. E2002-00297-CCA-R3-PC (Tenn. Crim. App., at Knoxville, July 15, 2003) (setting aside a plea agreement where trial counsel had erroneously advised the defendant that he would be allowed to serve a 10-year sentence for possession of cocaine with intent to resell in the county jail); Richard Lebraun Thomas v. State, No. 03C01-9306-CR-00190 (Tenn. Crim. App., at Knoxville, Mar. 29, 1994) (holding that mistaken advice by trial counsel that the defendant faced a possible life sentence rather than a Range III, 30-year sentence for armed robbery was a proper basis to set a plea agreement aside).

In our view, the record established clearly and convincingly that but for trial counsel's failure to accurately determine the range status, the petitioner would have insisted upon going to trial rather than entering a guilty plea. Trial counsel candidly acknowledged that the length of the potential sentence was a significant "factor in [the petitioner's] decision to accept the plea offer." The petitioner confirmed that absent the risk of a Range II sentence, he would have asked for a trial. As to this ground, the evidence preponderates against the conclusions of the trial court. As a Range I offender, with a charge in excess of 26 grams, the petitioner faced a potential sentence of between eight and twelve years. At Range II, the potential sentence was between 12 and 20 years. Even though the state may have been generous in its offer of a lesser offense at a lesser than maximum Range I term, the petitioner insisted that he was innocent and would have taken his chances on a trial despite the higher potential term in prison if found guilty.

The state's argument that trial counsel would not have changed his advice to accept the plea had he known that the petitioner was actually Range I is not entirely relevant to the issue. Even if

there is an attractive plea offer by the state, the critical determination is whether, but for trial counsel's error, the petitioner would have insisted on trial. Although his decision to seek a trial may be to his ultimate detriment, the petitioner has met his burden of proof as to that claim. The testimony of the petitioner, as corroborated by his trial counsel, is unrefuted that he would have insisted upon trial but for the error in advice.

II

Next, the petitioner argues that the trial court erred in determining that the petitioner entered a knowing and voluntary plea. The rule in Hill v. Lockhart, 474 U.S. 52 (1985), applies when a guilty plea is as the result of a deficiency in the performance of counsel. In the landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), the Supreme Court established that a voluntary and intelligent guilty plea was essential to a valid conviction. "[T]he core requirement of Boykin is 'that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary.'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Fontaine v. United States, 526 F. 2d 514, 516 (6th Cir. 1975)). In its comprehensive evaluation of the requirements of a voluntary and intelligent plea of guilt, our supreme made the following observation:

> [A] court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Id. (citing Caudill v. Jago, 747 F. 2d 1046, 1052 (6th Cir. 1984)).

In Blankenship, our supreme court held that the trial court is obligated to fully explain the offense charged and assure that the defendant is in control of his mental faculties and aware of the consequences of his plea, especially the penalty to be imposed. Blankenship, 858 S.W.2d at 904.

In this instance, the petitioner argues that the plea was not knowingly entered because of his lack of knowledge of the applicable range. He buttresses the argument by contending that the cocaine he had ingested the day before adversely affected his mental abilities. As indicated, there is no evidence to corroborate the petitioner's claim that his judgment was affected by his prior use of cocaine. Because, however, the record establishes that neither the state, the defense, nor the trial court was aware of whether the petitioner qualified as Range I or II at the time of his plea, it cannot be said that he was effectively assisted by counsel or that the plea was knowingly and intelligently entered, with a full and accurate appreciation of the potential penalties.

III

The petitioner also argues that the conviction should be set aside because the state and the trial court had failed to recite a sufficient factual basis for the plea. The petitioner argues that because no money was exchanged, there was no audiotape of the sale, and there was no cocaine in the possession of the confidential informant after the sale, the state failed to meet the requirements of State v. Mackey, 553 S.W.2d 337 (Tenn. 1997).

This court has previously determined that lack of a factual basis for a guilty plea is not a basis for post-conviction relief. See, e.g., Powers v. State, 942 S.W.2d 551, 555 (Tenn. Crim. App. 1996). In Powers, this court ruled that "failure to establish a factual basis for the plea on the record may contribute to the totality of the circumstances reflecting on an unknowing and involuntary plea." Id. Although this court has determined that the petitioner is entitled to relief, it is our view that the record does not support the claim that the failure to establish a sufficient factual basis for the plea contributed in any significant way to the petitioner's decision to plead guilty. The petitioner acknowledged during the submission hearing that he entered the plea because, in his words, "I am guilty." Because he was fully aware of the nature of the charge and had been previously convicted and served time in prison for the sale of cocaine, it is unlikely that the failure to recite specific facts further contributed to his decision to plead guilty.

IV

Next, the petitioner argues that the audiotape qualified as exculpatory evidence because it was not in any way incriminating. He contends that under Brady v. Maryland, 373 U.S. 83 (1963), the state had an obligation to make the audiotape available to the defense. Trial counsel acknowledged that prior to the guilty plea, he discussed the fact that there was a tape in existence. Although it is uncertain from the record of the evidentiary hearing, it appears that trial counsel was unaware of the content of the tape at the time of the plea agreement. Because there were two police officers in addition to the confidential informant that could testify to incriminating circumstances at trial and because the offer made by the state appears to be favorable, it is understandable that trial counsel suggested the acceptance of the plea without determining the content of the tape. It was after the plea that the petitioner insisted on listening to the tape and ultimately determined that it was not incriminating. In Brady, the Supreme Court established four prerequisites that must be met before a reviewing court may find a due process violation:

(1) The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the state is bound to release the information whether requested or not);
(2) the state must have suppressed the information;
(3) the information must have been favorable to the accused; and
(4) the information must have been material.

State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995).

In this instance, the audiotape is not in the record. Although there are references to the content of the tape, those references suggest that the tape recording was neither inculpatory nor exculpatory. Merely because there was a tape recording does not mean that the recording was favorable to the defense. Here, the record does not establish the favorability of the content of the tape. The petitioner would not be entitled to relief on this ground.

V

An issue listed but neither argued nor supported by authority or citations to the record is whether the grand jury which indicted the petitioner was racially biased. Nothing in the record of the evidentiary hearing supports the claim. The statute requires the petitioner to prove his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Furthermore, the issue has been waived by the failure to submit argument and citations of legal authority. See Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987).

In summary, because the record establishes that the petitioner would have insisted on his right to a trial but for the failure of his counsel to accurately determine his Range I status, the plea of guilt was neither knowingly nor voluntarily entered, the conviction must be set aside, and the petitioner must be granted a new trial.

_____
GARY R. WADE, PRESIDING JUDGE