RUCKER *v.* STATE.

(*Nashville*, December Term, 1938.)

Opinion filed June 10, 1939.

J. G. LACKEY, JR., and JAMES W. HOFSTEAD, both of Nashville, for plaintiff in error.

ERNEST F. SMITH, Assistant Attorney-General, for the State.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

Plaintiff in error, George Rucker, hereinafter referred to as defendant, was indicted for the murder of William Patton. Upon his trial he was found guilty of voluntary manslaughter and his punishment fixed at imprisonment in the State penitentiary for a period of five years. He has appealed to this court and assigned errors.

Two questions are raised by the assignments of error: First, whether the evidence is sufficient to show that the death of the deceased was caused by the injuries inflicted upon him by the defendant; and, second, whether the evidence shows that the injuries inflicted upon deceased by defendant were done in lawful self-defense of his person or property.

If the first question be resolved in defendant's favor, the second question need not be considered on this appeal.

The evidence discloses that shortly after midnight on the morning of September 30, 1938, a difficulty took place between deceased and defendant in the course of which defendant threw a rock at deceased striking him on the side of the head, breaking his jaw on both sides and knocking him down. Deceased also sustained an injury on the back of the head and minor cuts about the face. One witness testified that deceased had a stab wound in the chest, but Dr. Zimmerman, resident physician with the Nashville General Hospital, who treated the deceased when he was carried to the hospital at about

10 A. M., September 30, testified that he found no stab wounds on deceased and the cuts on the face and head were not serious enough to have caused death. Deceased was admitted to the hospital as a patient, his cuts dressed, the broken jaw set, and the patient put to bed. The injury to the back of the head was not personally examined by Dr. Zimmerman because it was already bandaged (deceased had been at the hospital earlier in the day and received treatment); but the X ray did not show any skull fracture. At the time deceased was admitted to the hospital his blood pressure was high, being 180/110. He was treated for several days and was apparently getting along satisfactorily, as well as could be expected, when suddenly on October 4, 1938, he developed convulsions and soon passed into unconsciousness. His blood pressure, which had decreased since he had been a patient, again rose rapidly, reaching the very high figure of 260/130, and he died in about two hours. The hospital records show "cause of death unknown."

Dr. Zimmerman further testified that the broken jaw, although a bad break, was not such as would ordinarily be considered serious or fatal; that he could not be sure what was the cause of the death of deceased because no post-mortem examination had been made; that because the cause of death was unknown he attempted to obtain the consent of the relatives of the deceased to perform a post mortem, but such consent had been refused because they were not going to prosecute; that the hospital officials had tried to induce the county officials to order a post mortem, without success. Dr. Zimmerman had attended the deceased personally and testified that he thought the immediate cause of death was a brain hemorrhage; that this hemorrhage could have been caused di-

rectly by the blow on the jaw, or could have been caused by high blood pressure existing independently of the blow; that while he could not be positive, he personally believed that the blow was not the cause of death for the reason that when a blow on the head causes a brain hemorrhage it usually occurs within twenty-four to thirty-six hours after the injury, and that in this case the patient did not die until late in the fifth day; that he believed that the deceased died from high blood pressure and could have died from that cause regardless of the injury.

Dr. Zimmerman further states that a blow on the head might cause high blood pressure, but that such is not the usual case; that when high blood pressure is caused by such a blow it usually either results in a fatal brain hemorrhage within twenty-four to thirty-six hours, or begins to decline with that time and passes off; that some people walk the streets with blood pressure as high as 180/110, but was not the usual case.

The trial judge asked Dr. Zimmerman if he could give an opinion as to the cause of the death of the deceased without speculation. The Doctor replied that he could not state, or even give an opinion of the cause of death without speculation, but that it seemed a little more probable under all the circumstances, as he had previously stated therein, that the blow on the jaw was not the cause of death and that the high blood pressure was the sole cause.

Dr. Zimmerman was the only witness in the case who testified as to the cause of death of deceased. It is our opinion that the State failed to establish that the deceased died as the result of the injuries inflicted on him by defendant. The *corpus delicti* was not proven.

In Wharton's Criminal Evidence, vol. 2, sec. 872, it is stated: "To sustain a conviction, proof of the criminal agency is as indispensable as the proof of death. The fact of death is not sufficient; it must affirmatively appear that the death was not accidental, that it was not due to natural causes, and that it was not due to the act of the deceased. Where it is shown by the evidence, on one side, that death may have been accidental, or it may have been the result of natural causes or due to suicide, and on the other side, that it was through criminal agency, a conviction cannot be sustained. Proof of death cannot rest in the disjunctive. It must affirmatively appear that death resulted from criminal agency."

In *Persons* v. *State*, 90 Tenn., 291, 294, 16 S. W., 726, 727, this court quoted the following from 1 Starkie on Evidence, 575: "Upon a charge of homicide, even when the body has been found, and although indications of a violent death be manifest, it shall still be fully and satisfactorily proved that the death was neither occasioned by natural causes, by accident, nor by the deceased himself."

Where it is equally possible and probable that the death resulted from one cause as from another cause and the defendant is not responsible for one of the causes, then any determination of the cause of death can only be speculative and conjectural and the evidence will be held insufficient to support a verdict of guilty.

The rule is well expressed in *State* v. *Rounds*, 104 Vt., 442, 160 A., 249, 254, as follows: "In a homicide case, where the life or liberty of a citizen is at stake, and where the guilt of the accused must be established beyond a reasonable doubt, the causal connection between the death of the decedent and the unlawful acts of the respondent cannot be supported on mere conjecture and

speculation. In *Wellman* v. *Wales*, 98 Vt., 437, 440, 129 A., 317, 319, we said that: 'Evidence which merely makes it possible for the fact in issue to be as alleged, or which raises a mere conjecture, surmise, or suspicion, is an insufficient foundation for a verdict.' ''

There is an abundance of authority to be found in the books to like effect as the above.

It is true, as held in *Odeneal* v. *State*, 128 Tenn., 60, 62, 157 S. W., 419, a case relied on by the State, that one who inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause. This rule can find no application in the instant case for the reason that the evidence fails to show that the death of deceased was a consequence, direct or through the operation of intermediate agencies, of the injuries received by deceased at the hands of defendant.

In *Lemons* v. *State*, 97 Tenn., 560, 37 S. W., 552, and *Mayfield* v. *State*, 101 Tenn., 673, 49 S. W., 742, it was held that it is not essential that the State should prove by expert testimony that the death resulted from the wounds, when there is no suggestion of death from any other cause, and the deceased was shown to have been in previous good health, and that his wounds were mortal. In the instant case it was shown by the State's witness, Dr. Zimmerman, that, in his opinion, the death of deceased was due to high blood pressure, and that his wounds were of a character not ordinarily fatal. The State offered no other expert testimony.

The State having failed to prove that the deceased met his death as the result of the injuries inflicted upon him by defendant, the judgment of the trial court must be reversed and the case remanded for a new trial.