James CASEY, Plaintiff in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Oct. 24, 1972.

Certiorari Denied by Supreme Court Feb. 5, 1972.

Ferdinand Powell, Jr., Johnson City, for plaintiff in error.

David M. Pack, Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, Lewis W. May, Dist. Atty. Gen., Mountain City, for defendant in error.

## OPINION

OLIVER, Judge.

Indigent and represented by court-appointed counsel, Casey was convicted of assault with intent to commit robbery without a deadly weapon in the Criminal Court of Washington County and was sentenced to imprisonment in the penitentiary for not less than three nor more than five years. He has brought his case to this Court by an appeal in the nature of a writ of error duly perfected.

The first two Assignments of Error relate to the defendant's plea in abatement to the indictment, complaining that the trial court erred (1) in overruling the plea in abatement, and (2) in denying his motion for a jury trial on the issues raised by his plea in abatement and the District Attorney General's joinder of issue thereon.

Prior to the trial on the merits, the defendant filed a plea in abatement to the indictment charging that it was not found upon the knowledge of the Grand Jury, or any member thereof, but solely upon the testimony of one Tom Tipton, and that Tipton's testimony was entirely hearsay in that he neither saw nor observed nor had any personal knowledge of the commission of the offense, and the defendant never confessed or admitted any participation in or connection with the offense to Tipton or in his presence.

At a hearing upon the plea in abatement, it was stipulated that the indictment was not founded upon any knowledge of the Grand Jury or any member thereof and that Tipton was the only person who testified before the Grand Jury in connection with the indictment. Tipton, a Detective Captain of the Johnson City Police Department, was the only witness called and testified that he had no personal knowledge of the offense charged in the indictment, and that the defendant at no time made any statement or admission concerning the offense; that, following a complaint made to the police department by the clerk of the liquor store mentioned in the indictment, he went to the defendant's home and arrested him; and that when he was placed in a line-up at police headquarters the clerk identified him as being the assailant.

■ Thus, clearly since only a question of law was presented inasmuch as there was no dispute or controversy about the facts relied on in the plea in abatement to the indictment, there was no issue of fact which a jury could determine, and hence no jury was required.

■ The trial court correctly decided the legal issue involved. The law is settled that an indictment may not be abated because it is founded on hearsay evidence, and the legality and sufficiency of evidence heard by the Grand Jury is not subject to review by this Court. Parton v. State, 2 Tenn.Cr.App. 626, 455 S.W.2d 645; State v. Marks, Tenn.Cr.App., 464 S.W.2d 326; Burton v. State, 214 Tenn. 9, 377 S.W.2d 900; Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397.

Finally, the defendant complains by his last Assignment of Error that the trial court failed to define "assault" in his instructions to the jury. The real basis of this contention is that by finding him guilty of "assault with intent to commit robbery without the use of a deadly weapon" the jury found that the "chrome-plated revolver" described by the victim and in the indictment as being the weapon the defendant used in the attempted robbery, and which his mother found and turned over to the police after his arrest, was only a blank cartridge pistol and was not a deadly weapon.

According to the liquor store clerk, when the defendant pointed the gun at him and demanded his money he closed the cash register and told the defendant he had his hand on the alarm and that the best thing for him to do was to get out of the store, and that the defendant then snapped the gun and it did not fire and he then fled with the statement, "You were lucky this time. I'll be back and get you the next time." The yellow shirt with cigars in the pocket which the clerk said the defendant was wearing in the liquor store was found in his home when he was arrested there some two or three hours later. The defendant denied being in the liquor store, and attempted to establish an alibi. He identified the chrome-plated revolver and said that it belonged to a nephew and he had it at his home for repair.

He does not question the sufficiency of the evidence to warrant and sustain the verdict of the jury, except indirectly in connection with his final Assignment that the court erred in failing to define the elements of assault in the charge to the jury.

Casey further insists, however, in essential substance, that use of a blank cartridge pistol, which was incapable of discharging a projectile against or into the alleged victim, completely negatived any "assault." Thus, he reasons that, without any definition or instruction from the trial judge as to what constitutes an assault in law, the jury labored in the dark without any knowledge or understanding of the crucial legal point in the case and that their verdict was void for that reason.

It must be remembered that the defendant was indicted and convicted for an *assault* upon the liquor store clerk. Thus, although the indictment charged that this particular assault was made with the intent to rob the clerk, the fact remains that the

substantive offense of which the defendant was indicted and convicted was an *assault,* the words "with intent to commit robbery" being merely descriptive of the felonious nature and purpose.

Obviously, then, it becomes very important to consider the constituent elements of an assault, and the failure of the trial judge to define and explain those prerequisite elements to the jury.

In Richels v. State, 33 Tenn. 606, the Supreme Court of this State defined assault as follows:

"An assault is an attempt or offer to do a personal violence to another. It is an inchoate violence, with the present means of carrying the intent into effect. 2 Greenl. on Ev., sec. 82. The intention to do harm is of the essence of the offence, and this intention is to be ascertained by the jury from the circumstances.

\* \* \* \* \* \*

"As a matter of law, then, it is not true that to point a pistol at another is of itself an assault, as charged by his honor. It may or may not be according to the attending circumstances. These must be such as to satisfy a jury that there was an intent, coupled with an ability, to do harm, or that the other party had a right so to believe from the facts before him; otherwise, there is no danger of a breach of the peace."

And the Court said in Bass v. State, 65 Tenn. 579, at 588:

"In view of many cases which have been adjudged, it is not inappropriately defined 'to be an attempt, with force or the unequivocal appearance of an attempt, with force or violence, to do a corporal injury; and may consist of any act which shall convey, to the mind of the person set upon, a well grounded apprehension of personal violence:' 2 Waterman's A.C.P., 41."

In Cowley v. State, 78 Tenn. 282, the Court made the following statements regarding assault:

"An assault, it is true, is an attempt, or the unequivocal appearance of an attempt, to do a corporal injury to another, the intent to do harm being essential: Richels v. State, 1 Sneed, 606; Bass v. State, 6 Baxt., 588 . . . And it is not necessary in a simple assault that there should be the specific purpose to do a particular injury, but general malevolence or recklessness will be sufficient: 1 Bish.Crim.Law, sec. 60; Tarver v. State, 43 Ala., 354; Regina v. Fretwell, 9 Cox.C.C., 471; Anderson v. State, 3 Head, 455."

The essential substance of the foregoing expressions by our Supreme Court concerning the nature and elements of assault is adequately summed up in the statement from Corpus Juris Secundum quoted approvingly in Huffman v. State, 200 Tenn. 487, 292 S.W.2d 738:

". . . An assault is rather clearly defined in 6 C.J.S. Assault and Battery § 60, at page 915, as:

'An assault may consist of any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person.'"

■ While an intent to do bodily harm is essential to constitute an assault, the necessary intent to do so may be imputed to the accused where he acts illegally or with reckless and wanton disregard for the safety of others. That is, the intent to injure may be inferred from the circumstances surrounding the act. 6 C.J.S. Assault and Battery § 63, pp. 919–920.

■ According to the weight of authority, an actual ability to commit a battery is not essential in simple criminal assault, an

apparent ability to do so being sufficient; that is, such apparent ability as to cause a person against whom it is directed reasonably to fear an injury. 6 C.J.S. Assault and Battery § 64, p. 920.

■ There is nothing in this record to indicate that the liquor store clerk actually feared bodily harm or injury at the hands of the defendant. As noted, he merely closed the cash register and told the defendant his hand was on the alarm and the best thing for him was to get out of the store. But "To constitute an assault at common law there need be no actual fear created, when physical force is actually put in motion, and the motion is such as to create a well founded apprehension of physical injury." 6 C.J.S. Assault and Battery § 66, p. 921.

■ Unquestionably, the average juror has no knowledge of the legal definition and constituent elements of an assault. Failure of the trial judge to instruct the jury on those matters, obviously left the jury to speculation and conjecture concerning the nature and essential requisites of an assault and as to whether the proof established that the defendant committed that offense. It is elementary that a verdict of a jury may not be based alone upon conjecture, guess, speculation or mere possibility. Hayes v. Gill, 216 Tenn. 39, 390 S.W.2d 213; Rucker v. State, 174 Tenn. 569, 129 S.W.2d 208; Evensky v. City of Memphis, 49 Tenn.App. 24, 350 S.W.2d 76; William v. Daniels, 48 Tenn.App. 112, 344 S.W.2d 555.

■ It is fundamental that in criminal cases there is a positive duty upon the trial judge to give the jury a complete charge on the law applicable to the facts of the case, and that the defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the trial court. Poe v. State, 212 Tenn. 413, 370 S.W.2d 488. Various cases illustrating and emphasizing those principles are cited in *Poe*.

In a homicide case in which the defendant was indicted for first degree murder, the trial judge committed reversible error in failing to give instructions on second degree murder so that the jury could ascertain in its verdict whether the offense was first or second degree murder. Jones v. State, 128 Tenn. 493, 161 S.W. 1016.

In 1866 the Supreme Court of this State said in Lancaster v. State, 43 Tenn. 339: "The plaintiffs in error were entitled to have the propositions of law governing their case, plainly stated to the jury, in such manner as to enable them to comprehend the principles involved."

And in 23A C.J.S. Criminal Law § 1194, p. 493, the law concerning the trial court's duty to explain the offense charged is stated as follows:

"A charge to the jury should not leave the jurors in ignorance of, or leave them to their conjecture as to, what constitutes the offense charged. Accordingly, while in charging the jury, the judge is not compelled to define a criminal offense in the very words of elementary writers, the instructions must contain a definition or explanation of the crime charged, in precise and accurate language, setting forth the essential elements thereof."

■ These basic principles long since settled require that in a prosecution for an assault the jury should be properly informed of the nature, elements, and ingredients of the offense. And on the trial of an assault with a deadly or dangerous weapon, the court should define the meaning of these terms, unless the instrument is such per se or as a matter of law. 6 C.J.S. Assault and Battery § 128(c), pp. 1003–1005.

■ Although the defendant presented no request to the court to instruct the jury concerning the definition and constituents of an assault, the court's duty to define and explain to the jury the elements of the offense charged in such a way that the

jury can comprehend the charge is so basic and fundamental to a fair trial that it is incumbent upon the trial court to give such instructions whether requested or not. The controlling rule of law is one and the same with the legal principle applicable where the trial court wholly fails to charge the law of alibi when that defense is interposed, Poe v. State, supra, and on such matters as reasonable doubt or dying declarations or on the law of circumstantial evidence where the case rests entirely on such evidence, Bishop v. State, 199 Tenn. 428, 287 S.W.2d 49.

Surely it goes without saying that the trial judge must give the jury a correct and understandable definition of the crime for which the defendant is on trial, for, quite obviously, unless the jury be told the definition and essential elements of the offense charged they are left uninformed and unable to make any intelligent judgment as to the defendant's guilt or innocence.

 The judgment of the trial court is reversed and this case is remanded thereto for a new trial.

O'BRIEN, J., concurs.

DWYER, J., dissenting.

DWYER, Judge (dissenting).

I respectfully disagree with my learned colleagues in their reversal of this record because of the trial judge's inadequate instructions to the jury on the definition of assault.

They reason that in the absence of the refinement of the word assault the jury was therefore uninformed and unable to make an intelligent judgment as to the defendant's guilt.

The court's charge as found in the bill of exceptions is quoted verbatim in pertinent part in order to bring into focus the pivotal point of reversal by the majority:

"The statutory law applicable is found in Section 39–607 of the Tennessee Code Annotated, which is as follows:

'39–607: Assault with intent to commit robbery—Penalty.—Whoever shall assault another, with intent feloniously and willfully to commit a robbery, shall, on conviction, be imprisoned in the penitentiary not less than three (3) years nor more than fifteen (15) years. If the assault is committed by means of a deadly weapon, whether injury results to the person assaulted or not, the penalty on conviction shall be imprisonment in the penitentiary for not less than five (5) years nor more than twenty-one (21) years.'

"An attempt in criminal law is an apparent unfinished crime, and hence is compounded of two elements: (1) the intent to commit a crime; and (2) a direct act done towards its commission, but falling short of the execution of the ultimate design. It need not, therefore, be the last proximate act to the consummation of the crime in contemplation, but it is sufficient if it be an act apparently adopted to produce the result intended.

"In order for the defendant to be convicted, you must find from the proof that the defendant intended to commit robbery and that he committed an assault upon the person of Gary Burleson in the furtherance of the attempt of the defendant to commit the robbery. The punishment varies according to whether or not a dangerous weapon is used in the assault.

"The gist of the offense of robbery is the taking with felonious intent of any money, goods or other personal property of any value, from the person of another, or in his presence, against his will, by force or violence or by putting him in fear, with intent to permanently deprive him of said property.

"The force required by law may consist of physical violence, directly applied, or

it may be constructive, by threats or otherwise putting in fear the person robbed and thereby overcoming his will.

"The fear constituting an element of robbery is fear of present personal peril from violence offered or impending.

"To constitute robbery, when the taking of the property is accomplished by force or violence, the force must have been either before or at the time of the taking; and must have been of such a nature as to show that it was intended to overpower the party robbed or to prevent resistance on his part.

"Though no violence is used, robbery may be committed by putting in fear the party robbed by threats or other acts of intimidation, but the fear must have been such as to create in the mind of the party robbed a reasonable apprehension of danger, and such fear must have been before or during the time of the commission of the offense.

"Resistance of the party robbed is not required but however slight the resistance of the party may have been, if force was used by the defendant to overcome it, this is sufficient to constitute the crime of robbery. But if the property was taken by stealth or fraud, and without force, intimidation or putting in fear, the crime, if any, may or may not be larceny from the person or larceny, but is not robbery.

"Armed robbery is where the force applied and or the fear induced at the time and during the robbery was with a deadly weapon.

"A deadly weapon is an instrument which from the use made of it at the time is likely to produce death or inflict bodily harm.

"To be guilty of armed robbery one need not strike or hit or shoot or cut or otherwise injure the party robbed. It is only necessary in this regard that the robber had and presented at the time a deadly weapon in such a way and manner as to induce the fear necessary to cause the party robbed to surrender his property."

We first note in considering the above charge that in defining "an attempt", in the first paragraph immediately following the statement of the statute, T.C.A. 39–607, the words used are also very close to the definition of an "assault", of which the two essential elements are intent and action. We further note that throughout the trial judge's full exposition of the law of robbery, the elements of assault, intent to harm and an attempt and apparent ability to do so, are covered in their essence in more than one passage.

The jury in reporting their verdict explicitly found the defendant guilty of committing an assault with the intent to commit robbery without the use of a deadly weapon. Of course, use of a deadly weapon in robbery provides far greater punishment, as incorporated in the statute. We make this observation to bolster our conclusion that this jury was not uninformed and did intelligently make a judgment as to the guilt of this defendant and as to which offense his actions constituted.

Richels v. State, 33 Tenn. 606, relied upon by the majority, does not support their reasoning as I view the question. In that case a reversal was ordered because of the erroneous charge of the trial court to the effect that pointing a pistol at another is of itself an assault. That is not the question on the facts as presented here. The defendant here pointed the pistol at the victim and accompanied this act with a threat and an order. It was therefore for the jury to say whether his intent was to assault the victim. The finding by the jury that the defendant had acted without a deadly weapon, does not necessarily of itself evince the finding that it was not the intent of the defendant to assault the victim and to rob him, or the finding that the victim was aware that the weapon was not deadly.

The majority reasons from their quoted authorities in substance thusly, to sustain their remanding this record: there is nothing in the record to indicate the clerk was in fear. Yet from the authorities enumerated it is crystal clear that the presence or absence of the necessary intent is for the jury to determine. When the defendant pointed the pistol at the clerk and demanded money and was refused he then snapped the pistol and said, "You were lucky this time. I'll be back and get you the next time." It would be complete conjecture and speculation to say as here there was no assault. Yet the majority reasons that the charge fails to explain to the jury the necessary definition of what is an assault. As I view the charge it adequately covered the offense in plain simple language that could be and was understood by the laymen jury.

The charge as given defined the offense of robbery with exactness. The charge therefore defined or conveyed to the jury sufficient facts to be apprised, and guided them as to the elements of assault. The terms "violence" and "force" are synonymous when used in relation to assault and include any application of force even though it entails no pain or bodily harm. See 6 C.J.S. Assault and Battery § 62, p. 917. The intention to do the harm is the essence of assault and is to be ascertained by the jury from the circumstances. Richels v. State, supra. I therefore feel that the charge was sufficient and full, in the absence of a request for additional or more complete instructions. See Powers v. State, 117 Tenn. 363, 371, 97 S.W. 815, and Carter v. State, 1 Tenn.Cr.App. 237, 240, 435 S.W.2d 134, 135.

I consider that the court's charge sufficiently apprised the jury of the law constituting the offense. At worst the charge was meager. In the absence of a request for additional or fuller explanation, it was not error. See Poe v. State, 212 Tenn. 413, 421, 370 S.W.2d 488.

It is elemental and axiomatic that the elements of an attempt to rob include the elements of assault. One cannot attempt to rob without committing an assault. Hence, an adequate charge on attempted robbery is also an adequate charge on assault. Furthermore, an "assault" is such a plain, ordinary, everyday term that the layman juror does not need a legal treatise to define it for his understanding.

I would affirm the judgment.