IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 19, 2019 Session

## STATE OF TENNESSEE v. DAVID ERIC LAMBERT

**Appeal from the Criminal Court for Sullivan County**
**No. S67077     James F. Goodwin, Jr., Judge**

———————————

### No. E2018-02282-CCA-R3-CD

———————————

The defendant, David Eric Lambert, appeals his Sullivan County Criminal Court jury conviction of unlawful photography, *see* T.C.A. § 39-13-605, arguing that (1) Code section 39-13-605 is unconstitutionally vague, (2) the trial court erred by denying his motion to dismiss on grounds that his conduct did not constitute a crime, (3) the admission of his statement at trial violated evidence rule 404(b), (4) the evidence was insufficient to support his conviction, and (5) the trial court erred by ordering that the defendant serve the 11-month and 29-day sentence imposed in this case consecutively to the defendant's sentence in another case. We conclude that the trial court erred by admitting the defendant's statement to the police, and the erroneous admission of the statement would entitle the defendant to a new trial. Because, however, the evidence adduced at trial was insufficient to support the defendant's conviction, the conviction is reversed, and the case is dismissed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed and Dismissed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Lesley A. Tiller and Dustin Franklin, Assistant District Public Defenders, for the appellant, David Eric Lambert.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Emily Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Sullivan County Grand Jury charged the defendant via presentment with one count of unlawful photography for his conduct at the Walmart in Kingsport on February 27, 2016.

## I. Motion to Dismiss

Prior to trial, the defendant moved the trial court to dismiss the charge against him, arguing that because his "alleged actions occurred in public places where there is no expectation of privacy," they were "not illegal under Tennessee law." The defendant also argued that Code section 39-13-605 was unconstitutionally vague because the language of the statute "is so broad that it does not provide individuals with adequate notice of proscribed activity and does not provide law enforcement with sufficient guidance to protect against arbitrary and discriminatory enforcement."

At the hearing on the defendant's motion,[1] following the arguments of the parties, the trial court concluded that the statute was not unconstitutional bcause it was not "so vague that the defendant wouldn't know what conduct" was illegal given that the statute has other elements that impact whether the taking of a photograph qualifies as a criminal offense.

Kingsport Police Department Detective Martin Taylor testified that, following an incident at the Hobby Lobby in Kingsport, he interviewed the defendant on March 24, 2016. At the conclusion of the interview, the defendant provided a statement that Detective Taylor read into the record:

> This all started about four or five years ago when my father died of cancer. I began videoing in public. I like blonde haired females but have no preference really. I recently have been going to shopping centers in Kingsport and have filmed women in Hobby Lobby, Walmart, and Ross and the shopping center on East Stone Drive. I did not mean to scare anyone and only filmed the females for my own purposes. I just like using the video function on my phone. It's kind of like an obsession with the technological aspect of a phone. I have never posted any of the images I have taken on the internet or share with other people. I actually did not think I was doing anything wrong because everything was done in a public place however I realize this was not a good

---

[1] The defendant was charged with unlawful photography in three separate cases involving separate victims, and both his motion and the subsequent hearing on the issue covered all three cases. We include only those facts pertinent to the case before us.

decision on my part. If it was not illegal it was definitely crossing the moral boundaries.

. . . . I gave the officers permission to look through the phone. Today I am giving Detective Tayor permission to examine my phone for the videos I have stored on the phone. There should be around 20 videos on the phone of different females I have collected recently. I understand the seriousness of the charges against me and need help with the problems I have. I am willing to undergo treatment and with the willingness of the court will do what is necessary to get help for my problem. Again I am very sorry for all of this and want the women I videoed to know I never meant any harm and I apologize for my actions. This is a truthful statement.

Detective Taylor said that he examined the photographs and videos on the defendant's cellular telephone but found no photographs or videos of any of the victims in the three Sullivan County cases.

Shawna Sutton testified that she was shopping at the Walmart in Kingsport on February 27, 2016, when she encountered the defendant "standing by the doors." She said that the defendant appeared to be approaching her and that "the look he was giving" made her "very uncomfortable," so she "chose to go out the front doors and around the outside of the store" to get to her car. When she turned to look back, she saw that the defendant was walking in the same direction and "matching my pace." She said that, at that point, she let the defendant go in front of her and then "veered off to the left going in between cars and was hoping to lose him." She said that the defendant "was within arm's length at the closest point," that he had a cellular telephone held "down and out" toward the "lower half" of her body, and that he appeared to be taking a photograph or video of her. The defendant did not speak to her and did not follow her all the way to her car.

During cross-examination, Ms. Sutton testified that she was clothed in black pants and a gray short-sleeved t-shirt with a black long-sleeved t-shirt underneath it. She said that the defendant did not attempt to photograph down her shirt or pants. The defendant stopped when she told him to do so. She acknowledged that she assumed that she was being filmed by surveillance cameras both inside and outside of the Walmart and agreed that, had the defendant photographed her, it would have displayed the same image captured by the surveillance video. She admitted that she did not know whether the defendant had actually taken a photograph or video of her.

As to this case, the trial court found that the defendant had "readily admit[ted] to videoing or filming or taking pictures with his phone of women in public." The court noted that Ms. Sutton "believed that he was taking a photo or video of her" and that the surveillance video "showed the defendant walking beside and a little bit in front of Ms. Sutton with his camera down in front of her near her crotch and as soon as they crossed paths the very first thing he did was look at his phone and what he captured." The court found that Ms. Sutton had a reasonable expectation of privacy "given the proximity" from which the defendant was capturing the images. In consequence, the trial court ruled that the issue of the defendant's guilt was a jury question rather than a question of law and denied his motion to dismiss.

### A. Propriety of Motion to Dismiss

As an initial matter, we consider whether the defendant's claims that the proscribing statute was unconstitutional and that the defendant's conduct could not support a conviction of unlawful photography were ripe for review via a pretrial motion to dismiss.

Tennessee Rule of Criminal Procedure 12 provides that "[a]party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Tenn. R. Crim. P. 12(b)(1). Our supreme court has determined that Rule 12 "is identical to its federal counterpart," Federal Rule of Criminal Procedure 12, and has concluded that matters "substantially founded upon and intertwined with factual evidence of the alleged offense that will necessarily be introduced at trial . . . fall[] within the province of the ultimate finder of fact, and ruling" on such matters "should be deferred until trial." *State v. Vickers*, 970 S.W.2d 444, 447 (Tenn. 1998) (citations omitted). An "issue is 'capable of determination' under the analogous federal rule if 'the facts surrounding the commission of the alleged offense would be of no assistance in determining' the issue." *State v. Sherman*, 266 S.W.3d 395, 403 (Tenn. 2008) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). Although those questions capable of determination tend to "raise questions of law rather than questions of fact," Rule 12 permits the trial court to "make findings of fact necessary to decide the questions of law presented by a pretrial motion so long as the factual findings are not intertwined with the general issue of guilt or innocence." *State v. Goodman*, 90 S.W.3d 557, 561 (Tenn. 2002) (citations omitted). "Where the factual findings necessary to resolve the motion are intertwined with the general issue, a ruling must be deferred until trial since, in criminal cases, there simply is no pretrial procedure akin to summary judgment for adjudicating questions of fact involving the general issue of guilt or innocence." *Id.* (citing *Vickers*, 970 S.W.2d at 447; *State v. Burrow*, 769 S.W.2d 510, 512 (Tenn. Crim. App. 1989)). To this end, the trial court "may consider evidence beyond the face of the indictment" so long as the facts to be considered are

"relevant only to the legal question presented by the defendant's motion, not to the general issue of guilt or innocence" and do not "qualify as 'factual evidence of the defendant's conduct at the time of the alleged offense.'" *Sherman*, 266 S.W.3d at 402 (quoting *Goodman*, 90 S.W.3d at 561). In any event, the trial court's factual findings must "not encroach upon the province of the jury." *Sherman*, 266 S.W.3d at 403 (citation omitted).

Applying these principles to the issues presented in this case, we conclude that the trial court properly considered the defendant's facial challenge to the constitutionality of Code section 39-13-605 and properly declined to consider the defendant's assertion that his conduct did not satisfy the elements of Code section 39-13-605. The latter question was essentially a pretrial challenge to the sufficiency of the State's evidence, which would "be akin to summary judgment for adjudicating questions of fact involving the general issue of guilt or innocence," a procedure that does not exist in criminal cases. *See Goodman*, 90 S.W.3d at 561.

### B. *Constitutionality of Code section 39-13-605*

At the time of the offense in this case, Code section 39-13-605 provided:

(a) It is an offense for a person to knowingly photograph, or cause to be photographed an individual, when the individual has a reasonable expectation of privacy, without the prior effective consent of the individual, or in the case of a minor, without the prior effective consent of the minor's parent or guardian, if the photograph:

(1) Would offend or embarrass an ordinary person if such person appeared in the photograph; and

(2) Was taken for the purpose of sexual arousal or gratification of the defendant.

(b) As used in this section, unless the context otherwise requires, "photograph" means any photograph or photographic reproduction, still or moving, or any videotape or live television transmission of any individual.

(c) All photographs taken in violation of this section shall be confiscated and, after their use as evidence, destroyed.

T.C.A. § 39-13-605(a)-(c) (2014). As indicated, the defendant challenged the constitutionality of Code section 39-13-605 on grounds that the phrase "when the individual has a reasonable expectation of privacy" is vague, essentially asserting a claim that Code section 39-13-605, due to its vagueness, failed to place him on notice that his conduct would violate the statute. The trial court concluded that the statute was not unconstitutional.

"Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below." *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009) (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008)). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional," *see Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003) (citations omitted), and "indulge every presumption and resolve every doubt in favor of the statute's constitutionality," *State v. Taylor*, 70 S.W.3d 717, 721 (Tenn. 2002).

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A "vague statute is vulnerable to a constitutional challenge because it (1) fails to provide fair notice that certain activities are unlawful; and (2) fails to establish reasonably clear guidelines for law enforcement officials and courts, which, in turn, invites arbitrary and discriminatory enforcement." *State v. Pickett*, 211 S.W.3d 696, 702 (Tenn. 2007). "The primary purpose of the vagueness doctrine is to ensure that our statutes provide fair warning as to the nature of forbidden conduct so that individuals are not 'held criminally responsible for conduct which [they] could not reasonably understand to be proscribed.'" *State v. Crank*, 468 S.W.3d 15, 22-23 (Tenn. 2015) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)).

"Despite the importance of these constitutional protections," our supreme court "has recognized the 'inherent vagueness' of statutory language . . . and has held that criminal statutes do not have to meet the unattainable standard of 'absolute precision.'" *Crank*, 468 S.W.3d at 23 (quoting *Pickett*, 211 S.W.3d at 704; *State v. McDonald*, 534 S.W.2d 650, 651 (Tenn. 1976)). "The vagueness doctrine does not invalidate every statute [that] a reviewing court believes could have been drafted with greater precision, especially in light of the inherent vagueness of many English words." *State v. Lyons*, 802 S.W.2d 590, 592 (Tenn. 1990). When "evaluating a statute for vagueness," this court "may consider the plain meaning of the statutory terms, the legislative history, and prior judicial interpretations of the statutory language." *Crank*, 468 S.W.3d at 23 (citing *Lyons*, 802 S.W.2d at 592); *see* T.C.A. § 39-11-104 (stating that each statute must be "construed according to the fair import of its terms, including reference to judicial

decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code").

The defendant correctly points out that the phrase "when the person has a reasonable expectation of privacy" is not defined in the statute. It is, however, a phrase commonly used in the law. The discussion of the existence of a reasonable expectation of privacy most often occurs in cases discussing the Fourth Amendment to the United States Constitution, but its use is not limited to that arena, and we can fathom no reason to ascribe to the phrase as used in Code section 39-13-605 a meaning different from that it enjoys in every other legal context. It is well established that a person has a reasonable expectation of privacy when the person has "an actual, subjective expectation of privacy and . . . society is willing to view the individual's subjective expectation of privacy as reasonable and justifiable under the circumstances." *State v. Munn*, 56 S.W.3d 486, 494 (Tenn. 2001) (citations omitted).

Utilizing the common understanding of the terms contained in Code section 39-13-605, we conclude that the statute does not "prohibit[] conduct 'in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Crank*, 468 S.W.3d at 22 (quoting *Pickett*, 211 S.W.3d at 704). Consequently, the trial court did not err by denying the defendant's constitutional challenge.

## II. Trial

At the February 2018 trial, Chris Aikens, the Loss Prevention Officer at the Walmart on West Stone Drive in Kingsport testified that the store was equipped with video surveillance equipment both inside and outside and that, pursuant to a request from the Kingsport Police Department, he pulled seven video clips from that equipment for February 27, 2016. During cross-examination, Mr. Aikens said that no one reported an incident involving the defendant to him on February 27, 2016.

Ms. Sutton testified that she encountered the defendant at the Walmart on West Stone Drive in Kingsport on February 27, 2016. As she prepared to leave the store, she observed the defendant standing near the exit. When the defendant approached her with an "unsettling look," she "went around him and went out a different door" to get to her car. Ms. Sutton said that she "turned to the left" and "could see him in the window matching my pace walking in the same direction." When the defendant exited the store, Ms. Sutton let the defendant go in front of her so as to avoid him. She recalled that the defendant remained in front of her, so she "veered to the left to go between some cars to, again, avoid him." The defendant then "came around beside of me, and then got in front of me again."

At one point, the defendant "got within arm's reach," and she saw that he "had a large, I guess, phone held out." The defendant's "arm was down, extended," and it appeared that he was taking a photograph or video of her. She said that it appeared to her that the defendant had the telephone trained on "my lower half of my body." At that point, she "said, 'I don't know what you think you're doing,' something to that effect, but, 'Stop, get away from me.'" The defendant ran away, and she went to her car and telephoned the Walmart manager to report the ordeal. She said that she did not give the defendant permission to photograph or video her and that she considered his actions an invasion of her privacy. She agreed that, if the defendant had, in fact, taken a photograph or video of her lower body, she would have found such a photograph or video embarrassing and offensive.

Ms. Sutton identified herself and the defendant from video surveillance footage taken at the Walmart on February 27, 2016. The footage shows the defendant walking toward her with something that she characterized as "a large phone" in his hand. It also shows the defendant with his arm extended down with the item still in his hand.

During cross-examination, Ms. Sutton acknowledged that Walmart surveillance cameras captured her image both inside and outside of the store. She conceded that she had never seen any photograph or video that had been taken by the defendant and that she did not, at any point, see the defendant's telephone actively capturing either a photograph or video of her.

Detective Taylor testified that, as part of his investigation of this case, he obtained a statement from the defendant on March 24, 2016. A redacted version of the statement was read to the jury. Detective Taylor searched the defendant's telephone but did not find any images of Ms. Sutton. He explained that a forensic examination would uncover only those images stored in the internal memory of the telephone itself and would not show those stored on an external device, like an "SD card." He said that if a photograph or video taken by a cellular telephone was stored to an SD card that was later removed from the telephone, a forensic examination could not detect that image. Detective Taylor observed that the defendant's cellular telephone had "duct tape over both of those lights that are on the back."

Detective Taylor testified that it was possible that, during the nearly one month between the incident involving Ms. Sutton and his interview of the defendant, the defendant could have deleted any images he might have taken of Ms. Sutton or switched cellular telephones entirely.

-8-

During cross-examination, Detective Taylor conceded that it was not illegal for the defendant to carry his cellular telephone either inside or outside of the Walmart. He acknowledged that the defendant did not handwrite his statement and only signed at the bottom of the page. He said it was his practice to write the statement for any interviewee. Detective Taylor testified that the defendant did not specifically admit photographing or filming Ms. Sutton, explaining, "I didn't specifically ask about individual people whenever I spoke with [the defendant]." He clarified during redirect examination that the defendant had admitted filming blond women at Walmart.

The State rested, and, following a full *Momon* colloquy, the defendant elected not to testify and chose to present no proof. Based upon the evidence presented by the State, the jury convicted the defendant as charged of one count of unlawful photography.

## A. Defendant's Statement

The defendant contends that the trial court erred by admitting his statement into evidence, arguing that its admission violated Tennessee Rule of Evidence 404(b)'s prohibition on propensity evidence. The State contends that the statement was admissible to prove motive and intent, both of which are permissible purposes under Rule 404(b).

The defendant was charged in three separate Sullivan County cases with unlawful photography, and the motions filed by the defendant covered all of the cases. In his motion in limine, the defendant moved the trial court for a hearing out of the presence of the jury to determine the admissibility of certain evidence, including the statement he provided to Detective Taylor and any evidence of other bad acts committed by the defendant. The charge in case number S67,079 went to trial before the charge in this case, and the trial court held a hearing on the admissibility of the defendant's statement prior to the beginning of that trial.

During the hearing, the defendant argued that the statement violated Rule 404(b)'s prohibition on propensity evidence, arguing that his general admission to "filming women" was not a specific admission of the charged offenses. The State conceded that the defendant's statement contained admissions that "could be considered referencing prior bad acts" but argued that "they are highly relevant and probative of elements that we would have to prove . . . including the identity of the defendant, his intent in committing the crime." The State contended that, because it had no video or photograph of the victim purportedly taken by the defendant, the defendant's admissions "that he videos women in public, that he has a preference for blond-haired females . . . that he goes into shopping centers in Kingsport" established his identity as the perpetrator. The State also argued that the defendant's admission that he took the videos

because he was obsessed with the technology available on his cellular telephone established his intent and that his admission that his actions crossed "moral boundaries" established that he acted for the purpose of sexual gratification as required by Code section 39-13-605.

The trial court concluded that the evidence was admissible on the issues of intent and motive. The court also ruled that the probative value of the statement on these issues was not outweighed by the danger of unfair prejudice. The court ordered that the statement be redacted and marked a copy of the statement with the necessary redactions.

A redacted copy of the defendant's statement was admitted into evidence and read to the jury in this case.

We begin by noting that the defendant's statement does not contain any admission to wrongdoing specific to this case. He was not asked about the incident that precipitated the charge in this case, and, as a result, he made no admission of guilt directly related to that incident. Instead, his statement contains a general admission that he had been using his cellular telephone to videotape women in the Kingsport area. The admission of this evidence of other bad acts by the defendant is governed by Tennessee Rule of Evidence 404(b).

Generally speaking, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Tenn. R. Evid. 404(a). To admit such evidence, the rule specifies four prerequisites:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

-10-

*Id.* When, as here, the trial court substantially complies with the procedural requirements of Rule 404(b), this court will overturn the trial court's ruling only when there has been an abuse of discretion. *See State v. Thacker*, 164 S.W.3d 208, 240 (Tenn. 2005).

The rationale underlying the general rule is that admission of such evidence carries with it the inherent risk of the jury's convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than upon the strength of the evidence. *Thacker*, 164 S.W.3d at 239. Nothing in the rule prohibits its application to statements made by the defendant, and although evidence of other bad acts "usually does not come in the form of statements or confessions made by the defendant, there exists no valid reason to make an exception to the requirements [of Rule 404(b)] for prior bad act evidence disclosed in a defendant's confession." *Id.* Despite Rule 404(b)'s general proscription on propensity evidence, "Tennessee recognizes three instances in which evidence of uncharged crimes may be admissible: (1) to prove identity (including motive and common scheme or plan); (2) to prove intent; and (3) to rebut a claim of mistake or accident if asserted as a defense." *State v. McCary*, 922 S.W.2d 511, 514 (Tenn. 1996) (citations omitted).

As was the case in *McCary*, "[n]one of the exceptions are present in this case." *Id.* The defendant's identity was not an issue because he was captured on the Walmart surveillance video and conclusively identified by Ms. Sutton. Additionally, the defendant did not assert that he was not the man featured in the video but instead "characterized his conduct, essentially, as non-criminal." *Id.* Similarly, the statement was not admissible to prove motive because the defendant did not make the issue of motive material. Moreover, the statement was not admissible, as the State argued, to prove that the defendant acted for the purpose of sexual gratification because nothing in the statement suggests that the defendant's conduct was motivated by a desire for sexual gratification. If anything, the statement belies such a motivation because the defendant claimed that he was compelled to make video recordings by his obsession with the technical functions of his cellular telephone. That the defendant, a man, admitted that he had been videotaping women, even blond women in particular, does not, without more, evince a motive of sexual gratification.

Additionally, the statement was not admissible to establish a "common scheme or plan." As our supreme court has recognized, this "exception, although recognized in Tennessee, is often misunderstood" because it is, in reality, "a vehicle for admitting other nearly identical crimes when the identity of the defendant is in issue." *Id.* (citation omitted). Because identity was not a material issue in this case, there was no need to resort to the common scheme or plan notion as a means of supplying the identity of the perpetrator. *See id.*

Finally, the defendant did not assert either accident or mistake of fact as a defense to the charged offense, so the admission of his statement was not necessary to rebut either defense. Consequently, the defendant's statement, which did not include any admission directly related to this case, was not admissible "on any material issue in this case. Its character, therefore, was that of 'propensity evidence,'" and, as a result, it should have been excluded pursuant to Rule 404(b). *McCary*, 922 S.W.2d at 114; *see also id.* at 515 (holding that McCary's personal diary entries expressing romantic feelings for several young men "constituted highly prejudicial 'propensity' evidence" and should not have been admitted when they did not reference any of the victims or witnesses at trial). Indeed, the State's arguments in the trial court establish that the State wanted to admit the defendant's statement to prove that because he had videotaped other women, he had necessarily videotaped or photographed Ms. Sutton in this case. Indeed, the State argued that the defendant's admission to videotaping other women proved that either a photograph or video existed in this case, despite that no video or photograph of Ms. Sutton was ever recovered. That is precisely the type of inference prohibited by Rule 404(b).

The evidence of the defendant's guilt was not overwhelming and was, as will be discussed below, not sufficient to support his conviction. Given the dearth of evidence supporting the defendant's guilt, we are constrained to conclude that the erroneous admission of the defendant's statement cannot be classified as harmless. Were we not reversing the defendant's conviction and dismissing the charge based upon the insufficiency of the evidence, we would reverse his conviction and remand it for a new trial based upon the erroneous admission of his statement.

### B. Sufficiency

The defendant contends that the evidence adduced at trial was insufficient to support his conviction. The State asserts that the evidence was sufficient.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.*

Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

> As charged in this case, unlawful photography is defined as follows:
>
> (a) It is an offense for a person to knowingly photograph, or cause to be photographed an individual, when the individual has a reasonable expectation of privacy, without the prior effective consent of the individual, or in the case of a minor, without the prior effective consent of the minor's parent or guardian, if the photograph:
>
> (1) Would offend or embarrass an ordinary person if such person appeared in the photograph; and
>
> (2) Was taken for the purpose of sexual arousal or gratification of the defendant.
>
> (b) As used in this section, unless the context otherwise requires, "photograph" means any photograph or photographic reproduction, still or moving, or any videotape or live television transmission of any individual.
>
> (c) All photographs taken in violation of this section shall be confiscated and, after their use as evidence, destroyed.

T.C.A. § 39-13-605(a)-(c) (2014).

Examined in the light most favorable to the State, the evidence established that the defendant followed Ms. Sutton both inside and outside of the Walmart in Kingsport and that he extended his cellular telephone toward her in a manner that led her to believe that he was taking either a photograph or video recording of her. At all times during the encounter, Ms. Sutton was fully clothed and in a public place. No photograph or video recording of Ms. Sutton was ever discovered in the defendant's possession or disseminated by the defendant in any way. In consequence, the State presented no photograph or video recording for the jury's consideration. In our view, this evidence was insufficient to establish all of the elements of the offense.

*i. Reasonable Expectation of Privacy*

Code section 39-13-605 makes it illegal to photograph an individual without the individual's consent "when the individual has a reasonable expectation of privacy." *Id.* § 39-13-605(a). As discussed above, a person has a reasonable expectation of privacy when the person has "an actual, subjective expectation of privacy and . . . society is willing to view the individual's subjective expectation of privacy as reasonable and justifiable under the circumstances." *Munn*, 56 S.W.3d at 494 (citations omitted). As the Supreme Court has explained, "[w]hat a person knowingly exposes to the public, even in his own home or office," is not covered by a reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 351-52 (1967) (citations omitted). "But what he seeks to preserve as private, even in an area accessible to the public," may be covered by a reasonable expectation of privacy. *Id.* Thus, the crucial question was not whether Ms. Sutton was in public when the defendant allegedly photographed her but whether, under the circumstances, she "had an actual, subjective expectation of privacy and . . . whether society is willing to view [that] subjective expectation of privacy as reasonable and justifiable under the circumstances." *Munn*, 56 S.W.3d at 494 (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

Ms. Sutton testified that she did not expect to be photographed by the defendant, but she did not testify that she expected her person and the outside of her clothing to remain completely private. Indeed, she acknowledged that she was in full view of any person present in the store or the parking lot. Moreover, the evidence established that any image that the defendant might have captured on his cellular telephone was also captured in the Walmart surveillance video. No evidence suggested that the defendant attempted to photograph Ms. Sutton underneath her clothing or once she was inside her automobile. Consequently, we conclude that Ms. Sutton did not have a subjective expectation of privacy.

Moreover, even if Ms. Sutton's testimony had supported a conclusion that she had a subjective expectation of privacy, that subjective expectation of privacy is not, in our view, one that society would view as reasonable. Exposure to the capture of our images by cameras has become, perhaps unfortunately, a reality of daily life in our digital age. When nearly every person goes about her day with a handheld device capable of taking hundreds of photographs and videos and every public place is equipped with a wide variety of surveillance equipment, it is simply not reasonable to expect that our fully-clothed images will remain totally private. In analogous circumstances, the Supreme Court has determined that "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United States v. Knotts*, 460 U.S. 276, 281-82 (1983). The Court has also

-14-

concluded that no reasonable expectation of privacy existed "in areas of the store where the public was invited to enter and to transact business." *Maryland v. Macon*, 472 U.S. 463, 469 (1985).

### ii. Character of Photograph

It is an element of the conviction offense that the photograph in question "[w]ould offend or embarrass an ordinary person if such person appeared in the photograph." Ms. Sutton testified that the defendant appeared to have his cellular telephone aimed at the lower half of her body and that she would likely have been embarrassed by a photograph of that part of her body. However, her testimony in this regard amounts to nothing more than speculation. Moreover, this element does not turn on whether Ms. Sutton would have been offended or embarrassed by any alleged photograph but instead on whether the photograph would offend or embarrass an ordinary person. In this case, the State presented no photograph of Ms. Sutton purportedly taken by the defendant. We cannot fathom how the trier of fact could make this determination in the absence of an actual photograph or video recording to assess under this objective standard. Because no photograph was presented, no rational trier of fact could have concluded, under the circumstances presented in this case, that a photograph of Ms. Sutton taken by the defendant "[w]ould offend or embarrass an ordinary person if such person appeared in the photograph."

In order to arrive at a conclusion that the defendant was guilty, the jury had to conclude that Ms. Sutton had a reasonable expectation of privacy in the parking lot of a Walmart, that the defendant had actually taken a photograph or video recording of her despite that the State presented no proof that either existed, and that this absent image would have offended or embarrassed an ordinary person. "Although the State is entitled to all reasonable inferences from the proof, the jury may not speculate an accused into the penitentiary." *State v. Pack*, 421 S.W.3d 629, 643 (Tenn. Crim. App. 2013) (citations omitted). We can sympathize with the plight of the State, but "a conviction for a criminal offense cannot be predicated solely upon conjecture, guess, speculation, or a mere possibility that [an accused] may be guilty," *State v. Transou*, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996) (citing *Rucker v. State*, 129 S.W.2d 208, 210 (Tenn. 1939); *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)), "despite that inculpative evidence may be simply unavailable," *Pack*, 421 S.W.3d at 643. "In this case, the series of inferential leaps necessary to support the defendant's conviction crosses the line from reasonable to speculative, particularly in light of" the absence of any photograph or video recording. *See Pack*, 421 S.W.3d at 643.

Accordingly, we hold that the evidence was insufficient to support the defendant's conviction of unlawful photography. The defendant's conviction is reversed, and the charge is dismissed.

## III. Sentencing

Following a sentencing hearing, the trial court imposed a sentence of 11 months and 29 days and ordered that the defendant serve the sentence consecutively to that imposed in cases S67,078 and S67,079. The court also ordered that the defendant serve his sentences in confinement.

Although we have reversed and dismissed the defendant's conviction, we will address his challenges to the sentence imposed to facilitate further appellate review.

Misdemeanor sentencing, in contrast to felony sentencing, is covered by Code section 40-35-302, the terms of which afford the trial court considerable flexibility in setting the length and manner of service of the misdemeanor sentence. *See* T.C.A. § 40-35-302. For example, a separate sentencing hearing is not mandatory in misdemeanor cases, and the enhancement and mitigating factors need only be considered when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." *Id.* § 40-35-302; *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). Although our supreme court has not yet applied the standard of review adopted in *State v. Bise*—abuse of discretion coupled with a presumption of reasonableness—to misdemeanor sentencing decisions, it has stated, "The abuse of discretion standard, accompanied by a presumption of reasonableness, is the appropriate standard of appellate review for all sentencing decisions." *State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013); *see also State v. King*, 432 S.W.3d 316, 324-25 (Tenn. 2014) (holding that, because "*Bise* and its progeny establish that the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions," the *Bise* standard is the appropriate standard of appellate review for a trial court's sentencing decision to either grant or deny judicial diversion"). Consequently, we join the other panels of this court that have held that the *Bise* standard similarly applies to appellate review of misdemeanor sentencing. *See, e.g., State v. Willard Hampton*, No. W2018-00623-CCA-R3-CD, slip op. at 17-18 (Tenn. Crim. App., Jackson, Mar. 12, 2019).

Because the record establishes that the trial court complied with the requirements of Code section 40-35-302 relative to misdemeanor sentencing, we "apply a presumption of reasonableness" to the sentencing decision in this case. Given the latitude afforded to trial courts in misdemeanor sentencing, the record reflects a basis for

requiring confinement in this case. The trial court emphasized the defendant's prior misdemeanor convictions, particularly those "dealing with obscene display, masturbation in public, those kinds of things, possession of drugs, breaking and entering . . . , multiple assaults." The court also noted that the defendant had violated the terms of previously-imposed probationary sentences. Because the evidence supports the conclusions of the trial court, we discern no error in the trial court's sentencing decision.

*IV. Conclusion*

Because the trial court erred by admitting the defendant's statement into evidence and because that error cannot be classified as harmless, the defendant would be entitled to a new trial. Because, however, the evidence was insufficient to support the defendant's conviction, his conviction is reversed, and the charge is dismissed.

_____
JAMES CURWOOD WITT, JR., JUDGE